**EXHIBIT "A"**

ALAN L. FRANK LAW ASSOCIATES, P.C.
Alan L. Frank, Esq.
135 Old York Road
Jenkintown, PA 19046
215-935-1000
215-935-1110 (fax)
afrank@alflaw.net
Attorneys for Plaintiff, Liberty Bell Capital II, L.P.

| | |
|---|---|
| LIBERTY BELL CAPITAL II, L.P.<br>401 City Avenue, Suite 812<br>Bala Cynwyd, PA 19004<br><br>Plaintiff<br><br>v.<br><br>WARREN HOSPITAL<br>185 Roseberry Street<br>Phillipsburg, NJ 08865<br><br>and<br><br>WH MEMORIAL PARKWAY INVESTORS, L.L.C.<br>185 Roseberry Street<br>Phillipsburg, NJ 08865<br><br>and<br><br>WARREN HEALTH CARE ALLIANCE, P.C.<br>185 Roseberry Street<br>Phillipsburg, NJ 08865<br><br>and<br><br>TWO RIVERS ENTERPRISES, INC.<br>185 Roseberry Street<br>Phillipsburg, NJ 08865<br><br>Defendants. | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY - TRENTON VICINAGE<br><br><br>CIVIL ACTION<br>DOCKET NO.:<br><br>COMPLAINT |

**COMPLAINT**

Plaintiff, Liberty Bell Capital II, L.P., by and through its undersigned counsel, Alan L. Frank, Esq. and the law firm of Alan L. Frank Law Associates, P.C., hereby brings this action against Defendants, Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C., and Two Rivers Enterprises, Inc., and in support thereof, respectfully sets forth as follows:

## PARTIES

1.   Plaintiff Liberty Bell Capital II, L.P. ("Plaintiff" or "Liberty Bell"), is a Delaware partnership. Each of the members of Liberty Bell resides in one of the following states: Pennsylvania, Michigan, New York, Washington, California, Florida, and Connecticut.

2.   Defendant Warren Hospital is a New Jersey corporation with its principal place of business at 185 Roseberry Street, Phillipsburg, NJ 08865.

3.   WH Memorial Parkway Investors, L.L.C. is a New Jersey limited liability company with its principal place of business at 185 Roseberry Street, Phillipsburg, NJ 08865. WH Memorial Parkway Investors, L.L.C.'s sole member is Two Rivers Enterprises, Inc.

4.   Two Rivers Enterprises, Inc. is a New Jersey corporation with its principal place of business at 185 Roseberry Street, Phillipsburg, NJ 08865.

5.   Warren Health Care Alliance, P.C. is a New Jersey corporation with a principal place of business at 185 Roseberry Street, Phillipsburg, NJ 08865.

## JURISDICTION AND VENUE

6.   This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the amount in controversy exceeds Seventy Five Thousand Dollars ($75,000.00) exclusive of interest and costs and there is complete diversity of citizenship.

2

Case 3:13-cv-04241-FLW-TJB   Document 1   Filed 07/11/13   Page 3 of 15 PageID: 3

7. Venue is proper under 28 U.S.C. § 1391(b)(1) because all defendants reside in this district and § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district.

## FACTS COMMON TO ALL COUNTS

A. **Introduction, Nature and Summary of the Case.**

8. This is a breach of contract and breach of fiduciary duty action.

9. Hillcrest Medical Plaza, L.L.C. ("Hillcrest Medical Plaza") was a holding entity for a property at 185 Roseberry Street, Phillipsburg, NJ 08865. Hillcrest Medical Plaza's purchase of the property was financed by a loan from Wells Fargo Bank, N.A. ("Wells Fargo") in the amount of $12,300,000.00. The debt was secured by a mortgage of the property in favor of Wells Fargo.

10. Hillcrest Medical Plaza defaulted on the loan. Wells Fargo obtained a foreclosure judgment against Hillcrest Medical Plaza. After Wells Fargo obtained a judgment, but before the sheriff's sale, Liberty Bell purchased the debt of Hillcrest Medical Plaza from Wells Fargo along with an assignment of the foreclosure judgment and the rights under the mortgage and loan.

11. At that time, there were several tenants and subtenants at the property, including Defendants Warren Hospital, WH Memorial Parkway Investors, Warren Healthcare Alliance, P.C., and Two Rivers Enterprises, Inc. Several of the tenants were Warren Hospital and its affiliates, all engaged in providing medical services on the property. Several tenants were medical practices unaffiliated with Warren Hospital. The remaining tenants were businesses not engaged in the practice of medicine.

12. The mortgage lien was superior in priority relative to the interests of the tenants and subtenants. Accordingly, a sheriff's sale would have terminated the tenants' leases by operation

3

of law.

13. At the time of the foreclosure proceedings, Warren Hospital had entered into a "Definitive Agreement" with St. Luke's Hospital and St. Luke's Health Network, Inc. (collectively, "St. Luke's"), under which St. Luke's was in the process of acquiring Warren Hospital. (A copy of the Definitive Agreement is attached hereto and incorporated herein as "Exhibit A.") St. Luke's acquisition of Warren Hospital was essential to the survival of Warren Hospital because Warren Hospital did not have sufficient funds to meet its financial obligations.

14. Under Article 10.5(a) of the Definitive Agreement, St. Luke's acquisition of Warren Hospital could not go forward unless Warren Hospital entered into a post foreclosure agreement with an entity that would acquire title to the property (Ex. A. page 51.) as termination of the leases and subleases would have caused a severe disruption to the tenants' medical services and businesses.

15. In order to avoid a disruption of the medical services and businesses and to comply with the requirements of the Definitive Agreement, Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C., and Two Rivers Enterprises, Inc. negotiated a Post-Foreclosure Agreement ("Agreement") with Liberty Bell. (A copy of the Post-Foreclosure Agreement is attached hereto as "Exhibit B.")

16. Under the terms of the Agreement, Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C., and Two Rivers Enterprises, Inc. would not contest the foreclosure and sheriff's sale, and would provide all cooperation necessary to effect Liberty Bell's acquisition of the property. In return, Liberty Bell would honor the leases that had been in place prior to the sheriff's sale if Liberty Bell were successful in acquiring the property. Liberty

4

Bell would become the owner of the property and directly lease the property to the tenants under the same material terms as those that existed prior to the sheriff's sale. In addition, Warren Hospital's master lease would be revised in order to exclude the then-vacant portions of the property, provide a reduction in rent in order to reduce the financial strain on Warren Hospital and relieve Warren Hospital of payments of millions of dollars of future rents in vacant space at the property. Finally, the Agreement also provided Warren Hospital relief from millions of dollars of past rental payments it had failed to make to the landlord that were due and owing and, via the assignment of leases and rents, were collateral for Liberty Bell in its foreclosure action on the property.

17. Further, the Post-Foreclosure Agreement between Warren Hospital, Liberty Bell, and the other Defendants satisfied the requirement under Article 10.5(a) of the Definitive Agreement between St. Luke's and Warren Hospital.

18. WH Memorial Parkway, L.L.C., as the sole managing member of Hillcrest Medical Plaza, shared the executed Agreement with InMed Investors, LLC ("InMed"), the other member of Hillcrest Medical Plaza.

19. At the sheriff's sale, there were no other bids made for the property. Accordingly, Liberty Bell would receive title to the property unless Hillcrest Medical Plaza exercised its right of redemption by satisfying the full amount of the judgment within ten days following the sheriff's sale.

20. At that time of the foreclosure proceedings, InMed had pending claims against WH Memorial Parkway, L.L.C., Warren Hospital and others in an unrelated litigation ("Hillcrest Litigation"). Subsequent to the sheriff's sale, the Defendants and Inmed entered into a scheme

5

under which they would agree to a *quid pro quo* arrangement: Warren Hospital would relinquish its ownership interest in Hillcrest Medical Plaza and give InMed sole ownership of Hillcrest Medical Plaza and, in return, InMed would dismiss all of its litigation claims against the Defendants in the Hillcrest Litigation.

21. Without disclosing the same to Liberty Bell, Defendants agreed on a scheme which would allow InMed to gain control of Hillcrest Medical Plaza and arrange financing of Hillcrest Medical Plaza's right of redemption. In that manner, Defendants would undermine the Agreement, block Liberty Bell's purchase of the property from a finalized foreclosure and force Liberty Bell out of the benefit of its bargain under the Agreement.

22. On the ninth day following the sheriff's sale, the debtor, Hillcrest Medical Plaza, exercised its right of redemption by paying the unpaid balance of the money owed under the judgment.

23. Hillcrest Medical Plaza's redemption stopped Liberty Bell from obtaining title to the property.

24. Without title to the property, Liberty Bell was unable to assume its rights as landlord with respect to the various tenants and subtenants.

25. As a result of Defendants' conduct, Liberty Bell suffered damages, including: A) lost rental income; and B) the value of the property less the amount of the judgment.

**B.    Details of Relationships Between and Among the Parties, Mortgage of the Subject Property, and Foreclosure Proceedings.**

26. Hillcrest Medical Plaza, L.L.C. ("Hillcrest Medical Plaza") was a holding company for the property at 185 Roseberry Street, Phillipsburg, NJ 08865.

6

27. InMed Investors, L.L.C. ("InMed") and WH Memorial Parkway Investors, L.L.C. were each 50% owners of Hillcrest Medical Plaza.

28. WH Memorial Parkway Investors, L.L.C. was the sole managing member of Hillcrest Medical Plaza and, thereby, the controlling member.

29. Defendant Two Rivers Enterprises, Inc. is the sole member of WH Memorial Parkway Investors, L.L.C.

30. Defendants Two Rivers Enterprises, Inc. and Warren Health Care Alliance, P.C. are affiliates of Warren Hospital. Warren Hospital is the sole stockholder of Two Rivers Enterprises, Inc.

31. Hillcrest Medical Plaza's purchase of the property was financed by a loan from Wells Fargo in the amount of $12,300,000.00.

32. Hillcrest Medical Plaza's obligations under the loan were secured by a mortgage of the property in favor of Wells Fargo.

33. Hillcrest Medical Plaza defaulted on its obligations under the loan by failing to make payments when due.

34. Wells Fargo subsequently commenced legal proceedings under the mortgage and loan documents.

35. Wells Fargo obtained a foreclosure judgment in its favor on July 11, 2011, in the action, *Wells Fargo Bank, N.A. v. Hillcrest Medical Plaza, L.L.C., et al*, in the Superior Court of New Jersey, Warren County, Chancery Division, Docket Number F-000468-11. The loan documents were merged into the foreclosure judgment.

36. After the foreclosure judgment, but before the sheriff's sale, Liberty Bell purchased from

Wells Fargo the debt of Hillcrest Medical Plaza, along with Wells Fargo's rights under the foreclosure judgment and the loan and mortgage on August 5, 2011.

37.   At that time of the foreclosure proceedings, multiple tenants leased and subleased portions of the property under a complex arrangement of leases and subleases.

38.   Warren Hospital and Hillcrest Medical Plaza were parties to a master lease agreement, under which Warren Hospital leased the entire property from Hillcrest Medical Plaza.

39.   Warren Hospital in turn subleased the entire property to WH Memorial Parkway Investors, L.L.C.

40.   WH Memorial Parkway Investors, L.L.C. in turn subleased portions of the property to Warren Health Care Alliance, P.C., Two Rivers Enterprises, Inc. and Warren Hospital.

41.   In addition, WH Memorial Parkway, L.L.C. directly leased other portions of the property to parties unaffiliated with Warren Hospital.

C.   **The Post-Foreclosure Agreement.**

42.   The mortgage lien was of a superior priority relative to the interests of the tenants and subtenants of the property.

43.   Accordingly, a foreclosure and sheriff's sale would cause the various leases and subleases to terminate by operation of law.

44.   At the time of the foreclosure proceedings, Warren Hospital had entered into a "Definitive Agreement" with St. Luke's, under which St. Luke's was in the process of acquiring Warren Hospital. St. Luke's acquisition of Warren Hospital was essential to the survival of Warren Hospital because Warren Hospital did not have sufficient funds to meet its financial obligations.

8

45. Under Article 10.5(a) of the Definitive Agreement, St. Luke's acquisition of Warren Hospital could not go forward unless Warren Hospital entered into a post foreclosure agreement with an entity that would acquire title to the property. (Ex. A, page 51.) as termination of the leases and subleases would have caused a severe disruption to the tenants' medical services and businesses.

46. In order to avoid a disruption of the medical services and businesses and to comply with the requirements of the Definitive Agreement, Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C., and Two Rivers Enterprises, Inc. negotiated the Agreement with Liberty Bell.

47. Under the terms of the Agreement, Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C., and Two Rivers Enterprises, Inc. would not contest the foreclosure and sheriff's sale, and would provide all cooperation necessary to effect Liberty Bell's acquisition of the property. In return, Liberty Bell would honor the leases that had been in place prior to the sheriff's sale if Liberty Bell were successful in acquiring the property. Liberty Bell would become the owner of the property and directly lease the property to the tenants under the same material terms as those that existed prior to the sheriff's sale. In addition, Warren Hospital's master lease would be revised in order to exclude the then-vacant portions of the property, along with a corresponding rent reduction, in order to reduce the financial strain on Warren Hospital and relieve Warren Hospital of future payments of millions of dollars of future rents in vacant space at the property. Finally, the Agreement also provided Warren Hospital relief from millions of dollars of past rental payments it had failed to make to the landlord that were due and owing and, via the assignment of leases and rents, were collateral for Liberty Bell

in its foreclosure action on the property.

48. Under the terms of the Agreement, Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C., and Two Rivers Enterprises, Inc. agreed to: "consent to the Foreclosure Proceeding, any Sheriff's Sale, and to the extent that they have legal standing to do so, the Cash Collateral Actions and acknowledge and agree that sufficient legal justification exists for the Foreclosure Proceeding, any Sheriff's Sale, and the Cash Collateral Actions"; "not contest, cause the stay of, or otherwise delay the Foreclosure Proceeding, any Sheriff's Sale, or the Cash Collateral Actions"; and "take such actions in or with respect to the Foreclosure Proceeding, any Sheriff's Sale, or the Cash Collateral Actions as the Lender [Liberty Bell] may reasonably request to effectuate the terms and provisions and purposes of this Agreement." (Ex. B, Art. 2.1.)

49. Further, the Post-Foreclosure Agreement between Warren Hospital, Liberty Bell, and the other Defendants satisfied the requirement under Article 10.5(a) of the Definitive Agreement between St. Luke's and Warren Hospital.

### D. Defendants Affirmatively Acted to Undermine the Agreement by Allowing InMed to Gain Control of the Debtor's Right of Redemption.

50. WH Memorial Parkway, L.L.C., as the sole managing member of Hillcrest Medical Plaza, shared the executed Agreement with InMed Investors, LLC ("InMed"), the other member of Hillcrest Medical Plaza. As the managing member WH Memorial Parkway Investors, L.L.C. held the sole and exclusive discretion to manage, essentially, all of the affairs and business activities of Hillcrest Medical Plaza, without any consent or approval being required from InMed.

51. At the sheriff's sale, there were no other bids made for the property. Accordingly, Liberty Bell would receive title to the property unless Hillcrest Medical Plaza exercised its right of redemption by satisfying the full amount of the judgment within ten days following the sheriff's sale.

52. At that time of the foreclosure proceedings, InMed had pending claims against WH Memorial Parkway, L.L.C., Warren Hospital and others in an unrelated litigation ("Hillcrest Litigation"). Subsequent to the sheriff's sale, the Defendants and Inmed entered into a scheme under which they would agree to a *quid pro quo* arrangement: Warren Hospital would relinquish its ownership interest in Hillcrest Medical Plaza and give InMed sole ownership of Hillcrest Medical Plaza and, in return, InMed would dismiss all of its litigation claims against the Defendants in the Hillcrest Litigation.

53. Further, despite the fact that the Post-Foreclosure Agreement between Warren Hospital, Liberty Bell, and the other Defendants satisfied the requirement under Article 10.5(a) of the Definitive Agreement between St. Luke's and Warren Hospital, and without any legal basis or any contractual duty to do so under the Definitive Agreement, Warren Hospital and the other Defendants decided to enter into a new a scheme with InMed to Liberty Bell's detriment.

54. Without disclosing the same to Liberty Bell, Defendants agreed on a scheme which would allow InMed to gain control of Hillcrest Medical Plaza and arrange financing of Hillcrest Medical Plaza's right of redemption. In that manner, Defendants would undermine the Agreement, block Liberty Bell's purchase of the property from a finalized foreclosure and force Liberty Bell out of the benefit of its bargain under the Agreement and derailing Liberty Bell's purchase of the property.

55. Shortly before the 10-day redemption period following the sheriff's sale expired, counsel for Warren Hospital notified Liberty Bell that Warren Hospital and the other parties to the Post Foreclosure Agreement had reached an agreement with InMed, under which InMed would take control of Hillcrest Medical Plaza and redeem the property.

56. Warren Hospital inquired whether Liberty Bell would be satisfied with the sudden change in plans. Liberty Bell protested and informed Warren Hospital that Liberty Bell wanted to move forward with the Agreement and obtain title to the property. However, Defendants ultimately decided to go forward with their scheme with InMed, despite owing contractual duties to Liberty Bell.

57. On the ninth day following the sheriff's sale, the debtor, Hillcrest Medical Plaza, exercised its right of redemption by paying the unpaid balance of the money owed under the judgment.

58. Hillcrest Medical Plaza's redemption stopped Liberty Bell from obtaining title to the property.

59. Without title to the property, Liberty Bell was unable to assume its rights as landlord with respect to the various tenants and subtenants.

60. As a direct and proximate result of Defendants' conduct, Liberty Bell has suffered damages.

## COUNT I
### Breach of Contract
(Defendants Warren Hospital; WH Memorial Parkway Investors, L.L.C.; Warren Health Care Alliance, P.C.; Two Rivers Enterprises, Inc.)

61. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

62. Liberty Bell entered into the Agreement with Defendants Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C., and Two Rivers Enterprises, Inc.

63. The Agreement was a legally valid and enforceable contract.

64. Under the Agreement, Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C., and Two Rivers Enterprises, Inc. were contractually obligated to "consent to the Foreclosure Proceeding, any Sheriff's Sale, and to the extent that they have legal standing to do so, the Cash Collateral Actions and acknowledge and agree that sufficient legal justification exists for the Foreclosure Proceeding, any Sheriff's Sale, and the Cash Collateral Actions." (Ex. A, Art. 2.1.)

65. Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C., and Two Rivers Enterprises, Inc. were contractually obligated to "not contest, cause the stay of, or otherwise delay the Foreclosure Proceeding, any Sheriff's Sale, or the Cash Collateral Actions." (Ex. A, Art. 2.1.)

66. Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C., and Two Rivers Enterprises, Inc. were contractually obligated to "take such actions in or with respect to the Foreclosure Proceeding, any Sheriff's Sale, or the Cash Collateral Actions as the Lender [Liberty Bell] may reasonably request to effectuate the terms

and provisions and purposes of this Agreement." (Ex. A, Art. 2.1.)

67. Additionally, the duty of good faith and fair dealing that is read into every contract required Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C. and Two Rivers Enterprises, Inc. to treat Liberty Bell honestly, fairly, and in good faith.

68. Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C., and Two Rivers Enterprises, Inc. breached their contractual duties by interfering with the foreclosure proceeding; halting the completion of foreclosure; aiding in the financing the debtor's redemption; and intentionally undermining Liberty Bell's purchase of the property.

69. As a direct and proximate result of Defendants' conduct, Liberty Bell has suffered damages.

## COUNT II
### Breach of Fiduciary Duty
**(Defendants Warren Hospital; WH Memorial Parkway Investors, L.L.C.; Warren Health Care Alliance, P.C.; Two Rivers Enterprises, Inc.)**

70. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

71. As joint venturers, Defendants Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C., and Two Rivers Enterprises, Inc. owed Liberty Bell a fiduciary duty.

72. Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C., and Two Rivers Enterprises, Inc. were obligated to act in the best interests of Liberty Bell, to disclose material events to Liberty Bell, and to refrain from willfully harming

Liberty Bell's interests.

73. Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C., and Two Rivers Enterprises, Inc. breached their fiduciary duties by intentionally undermining Liberty Bell's interest in the transaction, halting the sheriff's sale and foreclosure proceedings, and preventing Liberty Bell from purchasing the property.

74. As a direct and proximate result of Defendants' conduct, Liberty Bell has suffered damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount in excess of Five Million Dollars ($5,000,000.00), plus interest, costs, and attorney fees, and such other relief as this Honorable Court may deem just and proper.

Respectfully submitted,
ALAN L. FRANK LAW ASSOCIATES, P.C.

_____
Alan L. Frank, Esq.
*Attorney for Plaintiff, Liberty Bell Capital II, L.P.*

Dated: July 11, 2013