## POST-FORECLOSURE AGREEMENT RESPECTING STATUS OF LEASES

This POST-FORECLOSURE AGREEMENT RESPECTING STATUS OF LEASES (this "Agreement") is made this 2ⁿᵈ day of October, 2011 by and among WARREN HOSPITAL, a New Jersey non-profit corporation (the "Hospital"), WH MEMORIAL PARKWAY INVESTORS, L.L.C., a New Jersey limited liability company ("WH Memorial"), WARREN HEALTH CARE ALLIANCE, P.C., a New Jersey corporation ("WHCA"), TWO RIVERS ENTERPRISES, INC., a New Jersey corporation ("Two Rivers" and, together with the Hospital and WHCA, collectively, the "Hospital Entities" and, individually, each a "Hospital Entity"), and LIBERTY BELL CAPITAL II, L.P., a Delaware limited partnership ("Lender").

## R E C I T A L S

A. Wells Fargo Bank, N.A. ("Original Lender") and Hillcrest Medical Plaza, L.L.C., a New Jersey limited liability company ("Borrower"), were parties to that certain Letter of Credit and Reimbursement Agreement, dated as of September 5, 2003, as amended by that certain First Amendment to Letter of Credit and Reimbursement Agreement dated as of February 25, 2009, that certain Second Amendment to Letter of Credit and Reimbursement Agreement dated as of October 7, 2009, and that certain letter agreement dated January 13, 2010 (as further amended or otherwise modified from time to time, the "Reimbursement Agreement").

B. K.R.Hillcrest Mall LLC ("KRH") was the owner of certain real property located at the intersection of U.S. Route 22 West and Roseberry Street in Phillipsburg, Warren County, New Jersey, having a physical address of 185 Roseberry Street, Phillipsburg, New Jersey 08865 (the "Original Land", and together with all of the improvements constructed thereon, the "Original Property"). Pursuant to the terms of that certain Master Deed and Declaration of Restrictive and Protective Covenants, Easements, Charges and Liens for Hillcrest Condominium dated September 3, 2003 (the "Master Deed"), KRH, as declarant, submitted the Land to a condominium regime, whereby six (6) condominium units and appurtenant common elements were established (hereinafter collectively referred to as the "Condominium"). For purposes of this Agreement, the aforementioned condominium units are sometimes referred to herein individually as a "Unit" and collectively as the "Units". Further, the office and retail buildings which are located within and/or comprise the Units, as now existing and/or as may be erected hereafter from time to time, are collectively referred to herein as the "Buildings".

C. Borrower acquired title to three of the Units, being Units B, C and D (the "Property"), originally comprising 161,404 square feet of space. Borrower subsequently sold certain portions of the Units to third parties such that the Property currently consists of 141,557 square feet of space, all as more particularly described on **Exhibit A** attached hereto and incorporated herein.

D. Borrower's obligations under the Reimbursement Agreement were secured by, *inter alia*, that certain Mortgage and Security Agreement dated September 5, 2003, executed by Borrower in favor of Original Lender, with respect to the Property (the "Mortgage", and, together with the Reimbursement Agreement and all other documents and instruments executed in connection therewith, the "Loan Documents"). Unless otherwise provided,

{00179862;20}



capitalized terms contained but not defined herein have the meanings given to such terms in the Loan Documents.

E. An Event of Default occurred under the Reimbursement Agreement and other Loan Documents as a result of Borrower's failure to pay, satisfy, and perform the Obligations in full on their stated maturity of February 15, 2010 (the "Existing Event of Default"). Borrower requested that Original Lender forbear from exercising its rights and remedies under the Loan Documents, at law and in equity, based on the Existing Event of Default for a limited period of time. Original Lender agreed to do so under the terms of and subject to the conditions set forth in that certain Forbearance Agreement dated June 2, 2010, by and between Borrower and Original Lender (the "First Forbearance Agreement").

F. Original Lender's agreement to forbear from exercising its rights and remedies based on the Existing Event of Default pursuant to the terms of the First Forbearance Agreement terminated on July 31, 2010. Upon such termination, Borrower requested that Original Lender extend its agreement to forbear from exercising its rights and remedies under the Loan Documents based on the Existing Event of Default for a limited period of time. Original Lender agreed to do so under the terms of and subject to the conditions set forth in that certain Second Forbearance Agreement dated August 3, 2010, by and between Borrower and Original Lender (the "Second Forbearance Agreement").

G. Original Lender's agreement to forbear from exercising its rights and remedies based on the Existing Event of Default pursuant to the terms of the Second Forbearance Agreement terminated on September 30, 2010. Original Lender advised Borrower that it was unwilling to extend its agreement to forbear from exercising its rights and remedies under the Loan Documents based on the Existing Event of Default any further at this time. As a result, Original Lender commenced proceedings under the Mortgage and other Loan Documents to foreclose on the Property. A Foreclosure Judgment was obtained July 11, 2011, in the mortgage foreclosure action entitled *Wells Fargo Bank, N.A. v. Hillcrest Medical Plaza, L.L.C., et als*, filed in the Superior Court of New Jersey, Warren County, Chancery Division, bearing Docket No. F-000468-11 (the "Foreclosure Judgment"), and the Loan Documents were merged into the Foreclosure Judgment.

H. Original Lender and Lender have entered into an agreement pursuant to which Original Lender agreed to sell to Lender the Borrower's indebtedness under the Loan Documents (the "Loan") and assign the Loan Documents, the Foreclosure Judgment and all rights thereunder to Lender (the "Loan Purchase Agreement"). Closing under the Loan Purchase Agreement occurred on August 5, 2011, and a judicial sale of the Property is pending.

I. Pursuant to the terms of that certain Master Lease Agreement dated September 5, 2003, by and between Borrower, as landlord, and the Hospital, as tenant (the "Master Lease"), the Hospital leases the entire Property containing in total approximately 141,557 square feet of space. A true and correct copy of the Master Lease as amended from time to time is attached hereto and incorporated herein as **Exhibit B**.

J. Pursuant to the terms of that certain Master Sublease Agreement dated September 5, 2003, by and between the Hospital, as sublessor, and WH Memorial, as sublessee (the "Master Sublease"), WH Memorial subleases the Property from the Hospital. A true and correct

copy of the Master Sublease as amended from time to time is attached hereto and incorporated herein as **Exhibit C**. WH Memorial is an affiliate of the Hospital.

K.  WH Memorial currently subleases certain portions of the Property (the "Current Hospital Premises") to the Hospital Entities, pursuant to various subleases (the "Hospital Subleases") between WH Memorial, as sublessor, and the respective Hospital Entities, as sublessees. The Current Hospital Premises consists of approximately 53,188 square feet of space. A true and correct rent roll which describes each Hospital Sublease and identifies the Hospital Entity thereunder is attached hereto and incorporated herein as **Exhibit D** (the "Rent Roll") (provided, however, that the information contained in the Rent Roll is not deemed to modify or supersede the terms of the Hospital Subleases and/or Third Party Subleases (as hereinafter defined) and in the event of any conflict between the Rent Roll and the Hospital Subleases and/or Third Party Subleases, the terms set forth in the Hospital Subleases and Third Party Subleases shall control).

L.  WH Memorial subleases other portions of the Property (the "Third Party Premises") to certain unaffiliated third party medical practice groups and non-medical users (collectively, the "Third Party Subtenants" and, together with the Hospital Entities, the "Subtenants") pursuant to certain sublease agreements (collectively, the "Third Party Subleases" and, together with the Hospital Subleases, the "Subleases") between WH Memorial, as sublessor, and the Third Party Subtenants, as sublessees. The Third Party Premises consists of approximately 34,032 square feet of space. A true and correct rent roll which describes each Third Party Sublease and identifies the Third Party Subtenant thereunder is set forth on the Rent Roll.

M.  Borrower directly leases a portion of the Property (the "Concurrently Leased Portion") to,(i) A. Nicolosi Pizzeria, Inc., a New Jersey corporation ("Pizzeria"), pursuant to that certain Lease Agreement, dated September 8, 1993, as amended or otherwise modified (the "Pizzeria Lease"), entered into by and between Pizzeria, as tenant, and Borrower, as landlord, and (ii) Stephen J. Price, an adult individual ("S. Price"), Dominick J. Vangeli, Jr., an adult individual ("D. Vangeli"), and Hillcrest Barber Shop, L.L.C., New Jersey a limited liability company ("Barber Shop"), pursuant to that certain Lease Agreement, dated August 1, 1988, as amended or otherwise modified (the "Barber Shop Lease"), entered into by and among S. Price, D. Vangeli, and Barber Shop, as tenants, and Borrower, as landlord. The Barber Shop Lease and the Pizzeria Lease are sometimes referred to collectively herein as the "Concurrent Leases." The definition of "Third Party Premises" shall include the Concurrently Leased Portion. The definition of "Third Party Subtenants" shall include Pizzeria, S. Price, D. Vangeli, and Barber Shop. The definition of "Third Party Subleases" shall include the Concurrent Leases.

N.  [Intentionally Omitted].

O.  In total, the Subtenants currently occupy approximately 86,545 square feet of the Property under the Subleases (the "Occupied Premises"). That portion of the Property exclusive of the Current Hospital Premises and the Third Party Premises is referred to herein as the "Vacant Premises".

P.  WH Memorial and the Hospital Entities hereby acknowledge and agree that the leasehold interests established pursuant to the Master Lease, Master Sublease, and Subleases constitute inferior estates relative to the priority of the lien of the Mortgage.

Q.  Lender is prosecuting a foreclosure proceeding under the Mortgage (the "Foreclosure Proceeding") and exercised its security interest in a control account (the "Control Account") in which Borrower held approximately $1,300,000 as required by the Loan Documents and took possession of the sums therein (the "Cash Collateral Actions"). WH Memorial and the Hospital Entities believe it is in the collective best interests of the Hospital Entities and Third Party Subtenants that WH Memorial and the Hospital Entities enter into this Agreement because a sheriff's sale of the Property resulting from the Foreclosure Proceeding (a "Sheriff's Sale") will cause the Master Lease and Master Sublease to terminate by operation of law on account of the foreclosure and, absent this Agreement, such terminations could result in a severe disruption of the operations of the Hospital Entities and the provision of medical care by the Hospital Entities and the various medical practices which are run by the Third Party Subtenants. Accordingly, WH Memorial, the Hospital Entities, and Lender wish to enter into this Agreement pursuant to which (i) WH Memorial and the Hospital Entities consent to and shall not contest, stay, or otherwise delay the Foreclosure Proceeding, the Sheriff's Sale, or the Cash Collateral Actions, (ii) WH Memorial and the Hospital will, subject to the terms and conditions of this Agreement, and simultaneously with the execution of this Agreement cause the Hospital Entities and the Third Party Subtenants to enter into non-disturbance and attornment agreements (each an "NDA" and collectively the "NDA's") with Lender whereby, in the event Lender acquires the Property at the Sheriff's Sale, each of the Hospital Subleases and Third Party Subleases will become direct leases with Lender, as landlord, and each of the Hospital Entities and Third Party Subtenants will attorn to Lender as landlord thereunder under their respective Hospital Subleases or Third Party Subleases, as applicable (and the Hospital Subleases will be guaranteed by the Hospital), all on the terms and conditions set forth herein.

R.  The parties also acknowledge that, pursuant to the terms of a certain definitive agreement (the "St. Luke's Definitive Agreement"), the Hospital is currently under contract with St. Luke's Health Network, Inc. ("SLHN") regarding a potential transaction involving, inter alia, the acquisition of the assets of the Hospital by SLHN. A true and correct copy of the St. Luke's Definitive Agreement is attached hereto as Exhibit F. Lender acknowledges that SLHN is currently conducting its due diligence review of the Hospital and its business operations and that SLHN's obligation to proceed with and consummate closing on the transaction contemplated by the St. Luke's Definitive Agreement will be conditioned upon, among other things, Lender, WH Memorial, and the Hospital Entities entering into this Agreement, the occurrence of the Title Acquisition Date and the consummation of the transactions contemplated herein to ensure that essential operations of the Hospital are not disrupted by the known plan of action of Lender with respect to the Property. Therefore, Lender has agreed to enter into this Agreement to clarify the status of the Master Lease, Master Sublease, and Subleases post-foreclosure as well as to satisfy said condition set forth in the St. Luke's Definitive Agreement.

NOW THEREFORE, for good and valuable consideration, and in consideration of the respective benefits conferred upon Lender, WH Memorial, and the Hospital Entities as set forth above, the Hospital Entities, WH Memorial, and Lender hereby agree as follows:

{00179862;20}

PH2 1042614v2 10/07/11

1. **Definitions**. In addition to such other capitalized terms as are defined in other Sections of this Agreement, the following terms (which appear in this Agreement as capitalized terms) shall have the meanings ascribed to them in this Section 1.

   1.1 "Title Acquisition Date" shall mean the date on which Lender (or its affiliate nominee) receives a recorded sheriff's deed for the Property under which Lender (or its affiliate nominee) acquires title to the Property as a result of a Sheriff's Sale.

2. **No Contest; Communication with Consultant**.

   2.1 WH Memorial and the Hospital Entities hereby consent to the Foreclosure Proceeding, any Sheriff's Sale, and, to the extent that they have legal standing to do so, the Cash Collateral Actions and acknowledge and agree that sufficient legal justification exists for the Foreclosure Proceeding, any Sheriff's Sale, and the Cash Collateral Actions. WH Memorial and the Hospital Entities shall not contest, cause the stay of, or otherwise delay the Foreclosure Proceeding, any Sheriff's Sale, or the Cash Collateral Actions. WH Memorial and the Hospital Entities shall take such actions in or with respect to the Foreclosure Proceeding, any Sheriff's Sale, or the Cash Collateral Actions as the Lender may reasonably request to effectuate the terms and provisions and purposes of this Agreement.

   2.2 WH Memorial and the Hospital Entities hereby agree that Lender may communicate with Health Realty Advisors, and hereby authorize Health Realty Advisors to communicate with Lender and provide information requested by Lender regarding the Property and the operation thereof.

3. **THE LEASES**.

   3.1 **Prior Lien**. WH Memorial and the Hospital Entities acknowledge and agree that the lien created by the Mortgage in favor of Lender securing Borrower's obligations to Lender under the Loan Documents against the Property, and any modifications, renewals, or extensions thereof, constitutes a prior and superior lien relative to the inferior leasehold estates created with respect to the Property by the Master Lease, Master Sublease, and Subleases. Lender, the Hospital and WH Memorial acknowledge and agree that any Sheriff's Sale will cause the Master Lease and the Master Sublease to terminate by operation of law on account of the foreclosure, and in the event Lender acquires the Property at the Sheriff's Sale, the Subleases will become direct leases between the Lender and the respective Subtenants by the terms of the NDA's.

   3.2 **Master Lease, Master Sublease & Hospital Subleases**. The Lender has agreed to waive, under certain terms and conditions, any rights it may have to certain rent with respect to the Vacant Premises without waiving or otherwise affecting rent with respect to the Occupied Premises, and the parties, therefore, hereby agree as follows:

      (a) **NDA's; Continuing Obligation to Pay Rent**. Each of the Hospital Entities has, concurrently with the execution of this Agreement, executed and delivered to Lender an NDA. Accordingly, from the date hereof until the

Conditions (as hereinafter defined) have been satisfied, and Lender and the Hospital Entities have entered into the Hospital Lease Amendments, as defined in Section 3.3, Hospital and each other Hospital Entity shall pay rent to Lender, as landlord, under the Hospital Subleases in accordance with the terms of such Hospital Subleases (the "Agreed Rent").

(b)   **Waiver of Past Due Amounts and Other Liabilities.**   Lender acknowledges and agrees that, in the event (i) the Conditions have been satisfied and Lender and the Hospital Entities enter into the Hospital Lease Amendments, as described in Section 3.3, or (ii) Lender is not the winning bidder at the Sheriff's Sale ("Release Effective Time") (A) any security interest held by Lender in any rents due and owing under the Master Lease, Master Sublease, or Hospital Subleases other than Agreed Rent that is due and owing ("Waived Rent") shall be deemed to have been terminated, (B) Lender shall be deemed to have waived any such security interest and any rights to collect such Waived Rent from the Hospital Entities or WH Memorial, (C) Lender shall take such actions as reasonably necessary to terminate such security interests against such parties, and (D) Lender shall not seek to collect any arrearages or other sums purportedly due and owing under the Master Lease or Master Sublease or any other agreement (other than Agreed Rent that is due and owing) by the Hospital, as master tenant or otherwise, or WH Memorial, as sub-master tenant or otherwise, or any other Hospital Entity either directly or indirectly under any legal theory at law or in equity. For the avoidance of doubt, Lender, WH Memorial, and the Hospital Entities acknowledge, confirm and agree that the foregoing in no way limits, alters, or otherwise modifies Lender's rights to collect from Borrower any and all amounts owed to Lender by Borrower under or with respect to the Loan Documents.

(c)   **Mutual Release.**   Effective as of the Release Effective Time, except with respect to Waived Rent (which claims are to be released as and to the extent set forth in Section 3.2(b) above) and other than for Agreed Rent, Lender hereby releases WH Memorial and the Hospital Entities from any and all rights, claims, and causes of action, whether now known or unknown, asserted or unasserted, contingent or liquidated, or at law or in equity, which Lender ever had, now has, may have, or claim to have against WH Memorial or any of the Hospital Entities for or by reason of or relating to any aspect of the Master Lease, Master Subleases, Hospital Subleases, and Loan Documents. Effective as of the Release Effective Time, WH Memorial and each Hospital Entity hereby releases Lender from any and all rights, claims, and causes of action, whether now known or unknown, asserted or unasserted, contingent or liquidated, or at law or in equity, which WH Memorial or any Hospital Entity ever had, now has, may have, or claim to have against Lender for or by reason of or relating to any aspect of the Master Lease, Master Subleases, Hospital Subleases, and Loan Documents. For the avoidance of doubt, Lender, WH Memorial, and the Hospital Entities acknowledge, confirm and agree that the foregoing in no way limits, alters, or otherwise modifies Lender's rights to collect from Borrower any and all

amounts owed to Lender by Borrower under or with respect to the Loan Documents.

3.3   **Hospital Lease Amendments**.  Lender and the Hospital Entities acknowledge and agree that upon the satisfaction of the Conditions, Lender and the Hospital Entities shall promptly enter into amendments to each of the Hospital Subleases (each such amendment a "Hospital Lease Amendment", and collectively, the "Hospital Lease Amendments").  Each Hospital Lease Amendment shall (i) substitute Lender as the landlord under the applicable Hospital Sublease, (ii) provide any such Hospital Subleases with entities other than the Hospital shall be joined in by the Hospital and (iii) incorporate the terms set forth on **Exhibit I** attached to this Agreement.  Lender and the Hospital Entities shall negotiate in good faith with respect to the form and other terms of the Hospital Lease Amendments, which shall be mutually acceptable to the parties.  The parties shall use their best efforts to agree upon a proposed form of Hospital Lease Amendment within thirty (30) days of the date hereof.

3.4   **NDA's**.  The parties acknowledge and agree that (a) the Hospital Entities and WH Memorial have caused or will cause, prior to the Sheriff's Sale, each of the Subtenants to execute and deliver to Lender NDA's on terms acceptable to Lender, and (b) the Hospital has executed and delivered to Lender a joinder of each Hospital Entity's obligations under its Hospital Sublease (other than those Subleases under which Hospital is the Subtenant) (collectively, the "Initial Hospital Joinders").

3.5   **Failure of Conditions**.  Notwithstanding anything to the contrary contained herein, in the event any of the Conditions are not satisfied, then the obligations and agreements of Lender set forth in Sections 3.2 and 3.3 above including, without limitation, the waivers and releases set forth in Section 3.2(b) and Section 3.2(c) above, shall be void and of no force or effect and the Subleases shall continue in full force and effect as direct leases between Lender, as landlord, and the Sublessees, as tenant, pursuant to the NDA's.

4.   **SLHN TRANSACTION; LOAN ACQUISITION**.

4.1   The parties acknowledge that, as a condition to its acquisition of the Hospital, SLHN requires, among other things, the termination of the Master Lease, Master Sublease, and Subleases and entry into direct leases by and between Lender and the Hospital Entities and/or the Third Party Subtenants as contemplated herein (the "Hillcrest Mall Condition Precedent").  By executing the attached Acknowledgement and Consent, SLHN is acknowledging that this Agreement is satisfactory to SLHN and that the Hillcrest Mall Condition Precedent to SLHN proceeding to closing will be satisfied if Lender acquires title to the Property pursuant to any Sheriff's Sale and Lender and Hospital Entities perform their obligations hereunder.

4.2   WH Memorial and the Hospital Entities acknowledge and agree that Lender's obligations under Sections 3.2 and 3.3 of this Agreement are conditioned upon the satisfaction of the following (the "Conditions"):     (a) Borrower refraining from contesting, causing the stay of, or otherwise delaying the Foreclosure Proceeding or Cash Collateral Actions; (b) SLHN completing closing the transactions contemplated under and in accordance with the St. Luke's Definitive Agreement (the "Transaction"), and (c) no Agreed Rent being past due and owing.  In the event that

Hospital or SLHN shall definitively determine not to proceed with the Transaction, the same shall be deemed a failure of the Conditions and Hospital shall immediately provide written notice of the same to Lender.

4.3    The parties acknowledge that the St. Luke's Definitive Agreement is not binding upon SLHN. The parties further acknowledge and agree that completion of the Transaction is subject to, among other things, the approval of the respective Boards of Trustees of SLHN and the Hospital, the successful consummation of the St. Luke's Definitive Agreement, the completion of SLHN's due diligence efforts and satisfaction by SLHN (in its sole discretion) with the results of its findings, the receipt of all required federal, state or local governmental approvals and the successful negotiation of a plan of restructuring acceptable to SLHN between the Hospital, Allstate Investments, LLC, and certain other creditors of the Hospital. SLHN shall have no liability or obligation of any nature whatsoever to Lender or the Hospital to proceed with the Transaction except to the extent and only to such effect as shall be expressly set forth in the St. Luke's Definitive Agreement.

## 5.    MISCELLANEOUS.

5.1    **Binding Effect.** This Agreement shall be binding on, and inure to the benefit of, the Lender, WH Memorial, and the Hospital Entities and their respective successors and assigns upon (a) the Lender, WH Memorial, and the Hospital Entities executing this Agreement and (b) SLHN executing the Acknowledgement and Consent attached to this Agreement.   If Lender sells the Borrower's indebtedness under the Loan Documents and/or assigns the Loan Documents, and/or assigns the winning Sheriff's Sale bid, this Agreement shall not be terminated and the party that acquired the Loan Documents and/or the winning Sheriff's Sale bid from Lender, as the case may be, shall acquire the same subject to the terms of this Agreement. For the avoidance of doubt, nothing contained in this Agreement restricts, limits, or otherwise impedes Lender's ability to sell the Borrower's indebtedness under the Loan Documents and/or assign the Loan Documents, any winning Sheriff's Sale bid, and/or rights to acquire the title to the Property pursuant to any Sheriff's Sale before the occurrence of the Title Acquisition Date or to sell the Property after the occurrence of the Title Acquisition Date, provided, however, that the sale of the Loan Documents prior to the Title Acquisition Date, and/or the assignment of the winning Sheriff's Sale bid or any sale of the Property by Lender after the Title Acquisition Date shall be expressly made under and subject to this Agreement. . In the event that SNLH shall consummate the Transaction, SNLH shall be deemed an intended third party beneficiary of this Agreement. To induce Lender to enter into this Agreement, WH Memorial and the Hospital Entities represent and warrant to Lender that (a) they have the right, power, and authority and have taken all necessary corporate or other organizational action to duly authorize the execution, delivery, implementation, and performance of and compliance with this Agreement and all agreements, instruments, and documents executed or delivered by them or any of them pursuant hereto or in connection herewith, and (b) the execution and delivery of this Agreement and all agreements, instruments, and documents executed or delivered by them or any of them pursuant hereto or in connection herewith will not conflict with or result in a breach of the terms or conditions of the

organizational documents of WH Memorial or the Hospital Entities or any agreement to which WH Memorial or a Hospital Entity is a party.

5.2    **Notices.**  All notices or other communications required or permitted to be given pursuant to the provisions hereof shall be deemed served upon delivery or, if transmitted via nationally recognized overnight courier, upon the first to occur of receipt or the expiration of one (1) business day after deposit with such recognized overnight courier, addressed to the address of Lender or WH Memorial and the Hospital Entities appearing below:

<u>Lender:</u>

Liberty Bell Capital II, L.P.
c/o Titan Asset Management, LLC
1300 Virginia Drive, Suite 225
Fort Washington, PA  19034
Attention:  John Giangiulio

with a copy to:
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103
Attn: Michael Menkowitz, Esquire

<u>WH Memorial and the Hospital Entities:</u>

WARREN HOSPITAL
185 Roseberry Street
Phillipsburg, NJ 08865
Attn:  Mark Sbiendorio, Esquire

with a copy to:
SILVERANG & DONOHOE, LLC
595 E. Lancaster Avenue, Suite 203
St. Davids, PA 19087
Attention: Kevin J. Silverang, Esquire

provided, however, any party shall have the right to change its address for notice hereunder by the giving of written notice thereof to the other party in the manner set forth in this Agreement.

5.3    **Counterparts.**  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute and be construed as one and the same instrument.

5.4    **Remedies Cumulative.**  All rights or remedies of Lender are cumulative and shall be in addition to any and all other rights and remedies provided by law and by other agreements between Lender and Borrower or others.

5.5 **Paragraph Headings**. Paragraph headings in this Agreement are for convenience only and are not to be construed as part of this Agreement or in any way limiting or applying the provisions hereof.

5.6 **Integration and Entire Agreement**. This Agreement is specifically limited to the matters expressly set forth herein. This Agreement and all other agreements, instruments, and documents executed or delivered pursuant to or in connection with, referred to in, comprising, or relating to this Agreement constitute the sole, final, and entire agreement of the parties with respect to the subject matter hereof and thereof, supersede any and all prior oral and written communications with respect to the subject matter hereof and thereof, and may not be contradicted or varied by evidence of prior, contemporaneous, or subsequent oral agreements or discussions of the parties hereto. There are no oral agreements among the parties hereto relating to the subject matter hereof.

5.7 **Survival of Representations and Warranties**. All representations and warranties contained in this Agreement shall survive the execution of this Agreement.

5.8 **Governing Law**. This Agreement and the rights and obligations of the parties hereunder are to be construed and interpreted in accordance with and governed by the internal laws of the state of New Jersey without reference to conflict of laws principles.

5.9 **Severability of Provisions**. Any provision of this Agreement that is held to be illegal, inoperative, unenforceable, void, or invalid in any jurisdiction will, as to that jurisdiction, be ineffective to the extent illegal, inoperative, unenforceable, void, or invalid without affecting the remaining provisions in that jurisdiction or the legality, operation, enforceability, or validity of that provision in any other jurisdiction, and to this end the provisions of this Agreement are declared to be severable.

5.10 **Amendment and Waiver**. No amendment of this Agreement, and no waiver, discharge, or termination of any one or more of the terms or conditions hereof, is effective unless set forth in writing and signed by all of the parties hereto and acknowledged and consent to by SHLN.

5.11 **Termination**. Upon (a) SLHN's termination of the Definitive Agreement, (b) Borrower contesting, causing the stay of, or otherwise delaying the Foreclosure Proceeding or Cash Collateral Actions, (c) Lender's receipt of a notice from the Hospital or SLHN that that the St. Luke's Definitive Agreement has been terminated, or (d) any of the Hospital Entities failing to pay Agreed Rent, Lender may terminate this Agreement as to Lender's obligations and agreements set forth in Sections 3.2 and 3.3 above including, without limitation, the waivers and releases set forth in Section 3.2(b) and Section 3.2(c) above, but the Subleases shall continue in full force and effect as direct leases between Lender, as landlord, and the Sublessees, as tenant, pursuant to the NDA's, and the Hospital Joinders shall remain in full force and effect.

6.   **INCORPORATION.** The Acknowledge and Consent and the Exhibits attached hereto are incorporated herein by this reference.

[SIGNATURE PAGES FOLLOW]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

Witness:

**LENDER**

**LIBERTY BELL CAPITAL II, L.P.**, a Delaware limited partnership

By:    LB 3, L.P., its general partner

By:    Titan Asset Management, LLC, its general partner

By: _____
Name: _____
Title: _____

Name: *MICHAEL J. KORNACKI*

Witness:

**THE HOSPITAL**

WARREN HOSPITAL

By: _____
Name:
Title:

Witness:

**HOSPITAL AFFILIATES**

WH MEMORIAL PARKWAY INVESTORS, L.L.C.

Name: _____

By: _____
Name:
Title:

Witness:

WARREN HEALTH CARE ALLIANCE, P.C.

Name: _____

By: _____
Name:
Title:

{00179862;20}

PH2 1042614v2 10/07/11

Page 12 of 24

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

Witness:

**LENDER**

**LIBERTY BELL CAPITAL Ii, L.P.,** a Delaware limited partnership

By:    LB 3, L.P., its general partner

        By:    Titan Asset Management, LLC, its general partner

            By: _____

_____
Name:

                Name:
                Title:

Witness:

**THE HOSPITAL**

WARREN HOSPITAL

By: _____
Name: THOMAS H. LITZ
Title: PRESIDENT + CEO

Name: MARK SPLENDORIO, ESQ.

Witness:

**HOSPITAL AFFILIATES**

WH MEMORIAL PARKWAY INVESTORS, L.L.C.

By: _____
Name: THOMAS H. LITZ
Title: PRESIDENT + CEO

Name: MARK SPLENDORIO, ESQ.

Witness:

WARREN HEALTH CARE ALLIANCE, P.C.

By: _____
Name: THOMAS H. LITZ
Title: VICE - PRESIDENT

Name: MARK SPLENDORIO, ESQ.

{00179862;18}

Witness:

TWO RIVERS ENTERPRISES, INC.

By: _____
Name: THOMAS H. LITZ
Title: PRESIDENT - CEO

Name: MATRE BRLNDANO, Re.

(ALL SIGNATURES MUST BE ACKNOWLEDGED)

{00179862;18}

Page 12 of 23

## ACKNOWLEDGEMENT AND CONSENT

This Acknowledgement and Consent ("Consent") is attached to and incorporated by reference into that certain Post-Foreclosure Agreement Respecting Status of Leases dated of even date herewith, by and among WARREN HOSPITAL, a New Jersey non-profit corporation (the "Hospital"), WH MEMORIAL PARKWAY INVESTORS, L.L.C., a New Jersey limited liability company ("WH Memorial"), WARREN HEALTH CARE ALLIANCE, P.C., a New Jersey corporation ("WHCA"), TWO RIVERS ENTERPRISES, INC., a New Jersey corporation ("Two Rivers" and, together with the Hospital and WHCA, collectively, the "Hospital Entities" and, individually, each a "Hospital Entity"), and LIBERTY BELL CAPITAL II, L.P., a Delaware limited partnership ("Lender") (the "Post-Foreclosure Agreement"). Unless otherwise provided, capitalized terms contained but not defined herein have the meanings given to such terms in the Post-Foreclosure Agreement. St. Luke's Health Network, Inc.'s ("SLHN") obligation to proceed with closing on the transactions contemplated by the St. Luke's Definitive Agreement is conditioned upon, among other things, the termination of the Master Lease, Master Sublease, and Subleases and the entering into of direct leases in a form acceptable to SLHN between the Hospital Entities and Lender and the Third Party Subtenants and Lender, all as contemplated in the Post-Foreclosure Agreement. Accordingly, SLHN confirms that if Lender acquires title to the Property pursuant to any Sheriff's Sale and performs the obligations required of Lender under the Post-Foreclosure Agreement, such performance by Lender will be satisfactory to SLHN and the Hillcrest Mall Condition Precedent respecting the termination of the Master Lease, Master Sublease, and Subleases and the entering into of direct leases as aforesaid shall be deemed satisfied.

Notwithstanding the foregoing, completion of the Transaction (as defined in the St. Luke's Definitive Agreement) is subject to, among other things, the approval of the respective Board of Trustees of SLHN and the Hospital, the completion of SLHN's due diligence efforts and satisfaction by SLHN (at its sole discretion) with the results of its findings, the receipt of all required federal, state or local governmental approvals and the successful negotiation of a plan of restructuring acceptable to SLHN between the Hospital, Allstate Investments, LLC, and certain other creditors of the Hospital. SLHN shall have no liability or obligation of any nature whatsoever to Lender or the Hospital to proceed with the Transaction except to the extent and only to such effect as shall be expressly set forth in the St. Luke's Definitive Agreement to effect the Transaction. In no event shall Lender be deemed an intended beneficiary of any agreement between SLHN with respect to the Transaction; provided, however, SLHN agrees to be bound by the terms of the Post-Foreclosure Agreement, as the owner of the assets of the Hospital, should the Transaction occur.

· In the event that Hospital or SLHN shall definitively determine not to proceed with the Transaction, SLHN shall provide prompt written notice of the same to Lender.

ST. LUKE'S HEALTH NETWORK, INC.

By: _____

Name:   Thomas P. Lichtenwalner
Title:   Senior Vice President, Finance
Date:

{00179862;18}

PH2 1042614v2 10/07/11

Page 15 of 24

## EXHIBIT A

## PROPERTY

[See attached]

{00179862;20}

PH2 1042644v2 10/07/11

## EXHIBIT A

### LEGAL DESCRIPTION

All that certain Lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of Phillipsburg and Township of Lopatcong, County of Warren, State of New Jersey:

BEING known and designated by the following unit designations in the Hillcrest Condominium situate in the Town of Phillipsburg and the Township of Lopatcong, Warren County, New Jersey together with the appurtenant undivided percentage interest in the common elements thereto, in accordance with the terms, conditions, covenants, restrictions, easements, limitations and other provisions of the Master Deed for Hillcrest Condominium, dated September 3, 2003 and recorded in the Warren County Clerk's Office simultaneously herewith as same may now or hereinafter be lawfully amended or supplemented.

Unit B together with an undivided 34.82% interest in the common elements.

Unit C together with an undivided 15.38% interest in the common elements.

Unit D together with an undivided 23.09% interest in the common elements.

The above description is drawn in accordance with a survey made by Mace Consulting Engineers, P.C. dated August 28, 2003.

NOTE FOR INFORMATION ONLY:  Being Lot(s) 23 & 24, Block 58, Tax Map of the Town of Phillipsburg, and Lot 19, Block 401, Tax Map of the Township of Lopatcong, County of Warren.