# *EXHIBIT A*

ALAN L. FRANK LAW ASSOCIATES, P.C.
Alan L. Frank, Esq.
135 Old York Road
Jenkintown, PA 19046
215-935-1000
215-935-1110 (fax)
afrank@alflaw.net
Attorneys for Plaintiff, Liberty Bell Capital II, L.P.

| | |
|---|---|
| LIBERTY BELL CAPITAL II, L.P.<br>401 City Avenue, Suite 812<br>Bala Cynwyd, PA 19004<br><br>　　　　　Plaintiff<br><br>　　　　　v.<br><br>WARREN HOSPITAL<br>185 Roseberry Street<br>Phillipsburg, NJ 08865<br><br>　　　　　and<br><br>WH MEMORIAL PARKWAY INVESTORS, L.L.C.<br>185 Roseberry Street<br>Phillipsburg, NJ 08865<br><br>　　　　　and<br><br>WARREN HEALTH CARE ALLIANCE, P.C.<br>185 Roseberry Street<br>Phillipsburg, NJ 08865<br><br>　　　　　and<br><br>TWO RIVERS ENTERPRISES, INC.<br>185 Roseberry Street<br>Phillipsburg, NJ 08865<br><br>　　　　　Defendants. | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY - TRENTON VICINAGE<br><br>CIVIL ACTION<br>Docket No.:<br>13-CV-04241-FLW-TJB<br><br>FIRST AMENDED COMPLAINT |

## FIRST AMENDED COMPLAINT

Plaintiff, Liberty Bell Capital II, L.P., by and through its undersigned counsel, Alan L. Frank, Esq. and the law firm of Alan L. Frank Law Associates, P.C., hereby brings this action against Defendants, Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C., and Two Rivers Enterprises, Inc., and in support thereof, respectfully sets forth as follows:

## PARTIES

1. Plaintiff Liberty Bell Capital II, L.P. ("Plaintiff" or "Liberty Bell"), is a Delaware partnership. Each of the members of Liberty Bell resides in one of the following states: Pennsylvania, Michigan, New York, Washington, California, Florida, and Connecticut.

2. Defendant Warren Hospital is a New Jersey corporation with its principal place of business at 185 Roseberry Street, Phillipsburg, NJ 08865.

3. Defendant WH Memorial Parkway Investors, L.L.C. is a New Jersey limited liability company with its principal place of business at 185 Roseberry Street, Phillipsburg, NJ 08865. WH Memorial Parkway Investors, L.L.C.'s sole member is Two Rivers Enterprises, Inc.

4. Defendant Two Rivers Enterprises, Inc. is a New Jersey corporation with its principal place of business at 185 Roseberry Street, Phillipsburg, NJ 08865.

5. Defendant Warren Health Care Alliance, P.C. is a New Jersey corporation with a principal place of business at 185 Roseberry Street, Phillipsburg, NJ 08865.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the amount in controversy exceeds Seventy Five Thousand Dollars ($75,000.00) exclusive of interest and costs and there is complete diversity of citizenship.

7. Venue is proper under 28 U.S.C. § 1391(b)(1) because all defendants reside in this district and § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district.

## FACTS COMMON TO ALL COUNTS

### A. Relationships Between and Among the Parties, Mortgage of the Subject Property, and Foreclosure Proceedings.

8. This is a breach of contract action arising out of Defendants' breach of an agreement (the "Post-Foreclosure Agreement"). A copy of the Post-Foreclosure Agreement is attached hereto and incorporated herein as "Exhibit A."

9. Non-party Hillcrest Medical Plaza, L.L.C. ("Hillcrest Medical Plaza") was a holding company for the Property at 185 Roseberry Street, Phillipsburg, NJ 08865 (the "Property").

10. Non-party InMed Investors, L.L.C. ("InMed") and Defendant WH Memorial Parkway Investors, L.L.C. were each 50% members of Hillcrest Medical Plaza.

11. Defendant WH Memorial Parkway Investors, L.L.C. was the sole managing member of Hillcrest Medical Plaza and, thereby, the controlling member.

12. Defendant Two Rivers Enterprises, Inc. is the sole member of WH Memorial Parkway Investors, L.L.C.

13. Defendants Two Rivers Enterprises, Inc. and Warren Health Care Alliance, P.C. are affiliates of Defendant Warren Hospital. Warren Hospital is the sole stockholder of Two Rivers Enterprises, Inc.

14. Hillcrest Medical Plaza's purchase of the Property was financed by a loan from Wells Fargo in the amount of $12,300,000.00.

15. Hillcrest Medical Plaza's obligations under the loan were secured by a mortgage of the Property in favor of Wells Fargo.

16. Hillcrest Medical Plaza defaulted on its obligations under the loan by failing to make payments when due.

17. Wells Fargo subsequently commenced legal proceedings under the mortgage and loan documents.

18. Wells Fargo obtained a foreclosure judgment in its favor on July 11, 2011, in the action, *Wells Fargo Bank, N.A. v. Hillcrest Medical Plaza, L.L.C., et al*, in the Superior Court of New Jersey, Warren County, Chancery Division, Docket Number F-000468-11. The loan documents were merged into the foreclosure judgment.

19. After the foreclosure judgment, but before the sheriff's sale, Liberty Bell purchased from Wells Fargo the debt of Hillcrest Medical Plaza, along with Wells Fargo's rights under the foreclosure judgment and the loan and mortgage on August 5, 2011.

20. At that time of the foreclosure proceedings, multiple tenants leased and subleased portions of the Property under a complex arrangement of leases and subleases.

21. Defendant Warren Hospital and non-party Hillcrest Medical Plaza were parties to a master lease agreement, under which Warren Hospital leased the entire Property from Hillcrest Medical Plaza.

22. Warren Hospital in turn subleased the entire Property to Defendant WH Memorial Parkway Investors, L.L.C.

4

23. WH Memorial Parkway Investors, L.L.C. in turn subleased portions of the Property to Defendants Warren Health Care Alliance, P.C., Two Rivers Enterprises, Inc. and Warren Hospital.

24. In addition, WH Memorial Parkway, L.L.C. directly leased other portions of the Property to non-parties unaffiliated with Warren Hospital.

**B.   The Post-Foreclosure Agreement.**

25. The mortgage lien was of a superior priority relative to the interests of the tenants and subtenants of the Property.

26. Accordingly, a foreclosure and sheriff's sale would cause the various leases and subleases to terminate by operation of law.

27. At or around the time the foreclosure proceedings commenced, Warren Hospital had entered into a "Definitive Agreement" with non-party St. Luke's, under which St. Luke's would acquire Warren Hospital. (A copy of the Definitive Agreement is attached hereto and incorporated herein as "Exhibit B.") St. Luke's acquisition of Warren Hospital was essential to the survival of Warren Hospital because Warren Hospital did not have sufficient funds to meet its financial obligations.

28. Under Article 10.5(a) of the Definitive Agreement between St. Luke's and Warren Hospital, St. Luke's acquisition of Warren Hospital was contingent upon Warren Hospital entering into a post foreclosure agreement with an entity that would acquire title to the Property, (Ex. B, page 51.), as termination of the leases and subleases would have caused a severe disruption to the tenants' medical services and businesses.

29. In particular, Article 10.5(a) of the Definitive Agreement provides:

5

> Either (i) the Hospital Entities (as defined in the Post-Foreclosure Agreement) and Wells Fargo shall have entered into the Post-Foreclosure Agreement; or (ii) Wells Fargo shall have sold the credit facility secured by HMP [Hillcrest Medical Plaza] to a party approved in writing by the Hospital Entities, and such party and the Hospital Entities shall have entered into an agreement which is identical in all material respects to the Post-Foreclosure Agreement; or (iii) at the foreclosure sale contemplated in the Post-Foreclosure Agreement, a third party bidder shall be the successful bidder for HMP, such bidder shall be approved in writing by the Hospital Entities, and such party and the Hospital Entities shall have entered into an agreement which is identical in all material respects to the Post-Foreclosure Agreement (such agreement or an agreement as described in clause (ii) of this subsection being referred to as a "Replacement Post-Foreclosure Agreement"); or (iv) the Hillcrest Litigation shall have been finally settled in a manner which provides to the Hospital Entities all of the rights and benefits of the Post-Foreclosure Agreement and is otherwise satisfactory to the [sic] St. Luke's in its discretion (the "Hillcrest Settlement").

(Ex. B, Page 51, Art. 10.5(a).)

30. In order to avoid a disruption of the medical services and businesses and to comply with the requirements of the Definitive Agreement, Defendants Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C., and Two Rivers Enterprises, Inc. negotiated the Post-Foreclosure Agreement with Liberty Bell.

31. Under the terms of the Post-Foreclosure Agreement, Defendants Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C., and Two Rivers Enterprises, Inc. agreed not to contest the foreclosure and sheriff's sale, and to provide all cooperation necessary to effect Liberty Bell's acquisition of the Property.

32. In consideration therefore, Liberty Bell agreed to honor the leases that had been in place prior to the sheriff's sale if Liberty Bell were successful in acquiring the Property. Liberty Bell would become the owner of the Property and directly lease the Property to the tenants under the same material terms as those that existed prior to the sheriff's sale. In addition, Liberty Bell agreed to revise Warren Hospital's master lease to exclude the then-vacant portions of the

Property, and provide Warren Hospital with a rent reduction to reduce the financial strain on Warren Hospital and relieve Warren Hospital of future payments of millions of dollars of future rents in vacant space at the Property. Finally, Liberty Bell also agreed in the Post-Foreclosure Agreement to relieve Warren Hospital of millions of dollars of past rental payments it had failed to make to the landlord that were due and owing and, via the assignment of leases and rents, were collateral for Liberty Bell in its foreclosure action on the Property.

33. Under the terms of the Post-Foreclosure Agreement, Defendants Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C., and Two Rivers Enterprises, Inc. agreed to: "consent to the Foreclosure Proceeding, any Sheriff's Sale, and to the extent that they have legal standing to do so, the Cash Collateral Actions and acknowledge and agree that sufficient legal justification exists for the Foreclosure Proceeding, any Sheriff's Sale, and the Cash Collateral Actions"; "not contest, cause the stay of, or otherwise delay the Foreclosure Proceeding, any Sheriff's Sale, or the Cash Collateral Actions"; and "take such actions in or with respect to the Foreclosure Proceeding, any Sheriff's Sale, or the Cash Collateral Actions as the Lender [Liberty Bell] may reasonably request to effectuate the terms and provisions and purposes of this Agreement." (Ex. A, Page 5, Art. 2.1.)

34. In particular, Article 2.1 of the Post-Foreclosure Agreement provides:

> WH Memorial and the Hospital Entities hereby consent to the Foreclosure Proceeding, any Sheriff's Sale, and, to the extent that they have legal standing to do so, the Cash Collateral Actions and acknowledge and agree that sufficient legal justification exists for the Foreclosure Proceeding, any Sheriff's Sale, and the Cash Collateral Actions. WH Memorial and the Hospital Entities shall not contest, cause the stay of, or otherwise delay the Foreclosure Proceeding, any Sheriff's Sale, or the Cash Collateral Actions. WH Memorial and the Hospital Entities shall take such actions in or with respect to the Foreclosure Proceeding, any Sheriff's Sale, or the Cash Collateral Actions as the Lender may reasonably request to effectuate the terms and provisions and purposes of this Agreement.

7

(Ex. A, Page 5, Art. 2.1.)

35. The Post-Foreclosure Agreement further provides:

> 4.2 WH Memorial and the Hospital Entities acknowledge and agree that Lender's obligations under Sections 3.2 and 3.3 [concerning Liberty Bell's honoring leases and subleases, and reduction of Warren Hospital's rent obligations] of this Agreement are conditioned upon the satisfaction of the following (the "Conditions"): (a) Borrower refraining from contesting, causing the stay of, or otherwise delaying the Foreclosure Proceeding or Cash Collateral Actions; (b) SLHN [St. Luke's Health Network, Inc.] completing closing the transactions contemplated under and in accordance with the St. Luke's Definitive Agreement (the "Transaction"), and (c) no Agreed Rent being past due and owing. In the event that Hospital or SLHN shall definitively determine not to proceed with the Transaction, the same shall be deemed a failure of the Conditions and Hospital shall immediately provide written notice of the same to Lender.

(Ex. A, Pages 7-8, Art. 4.2.)

36. The Post-Foreclosure Agreement further provides:

> 5.1 **Binding Effect.** This Agreement shall be binding on, and inure to the benefit of, the Lender, WH Memorial, and the Hospital Entities and their respective successors and assigns... To induce Lender to enter into this Agreement, WH Memorial and the Hospital Entities represent and warrant to Lender that (a) they have the right, power, and authority and have taken all necessary corporate or other organizational action to duly authorize the execution, delivery, implementation, and performance of and compliance with this Agreement and all agreements, instruments, and documents executed or delivered by them or any of them pursuant hereto or in connection herewith, and (b) the execution and delivery of this Agreement and all agreements, instruments, and documents executed or delivered by them or any of them pursuant hereto or in connection herewith will not conflict with or result in a breach of the terms or conditions of the organizational documents of WH Memorial or the Hospital Entities or any agreement to which WH Memorial or a Hospital Entity is a party.

(Ex. A, Pages 8-9, Art. 5.1.)

8

37. Further, the Post-Foreclosure Agreement between Defendants and Liberty Bell satisfied the Defendants' requirement under Article 10.5(a) of the Definitive Agreement between St. Luke's and Warren Hospital.

### C. Defendants Affirmatively Acted to Undermine the Agreement by Allowing InMed to Gain Control of the Debtor's Right of Redemption.

38. Defendant WH Memorial Parkway, L.L.C., as the sole managing member of Hillcrest Medical Plaza, shared the executed Post-Foreclosure Agreement with non-party InMed Investors, LLC ("InMed"), the other member of Hillcrest Medical Plaza. As the managing member of Hillcrest Medical Plaza, Defendant WH Memorial Parkway Investors, L.L.C. held the sole and exclusive discretion to manage, essentially, all of the affairs and business activities of Hillcrest Medical Plaza, without any consent or approval being required from InMed.

39. The sheriff's sale was held on November 28, 2011. At the sheriff's sale, there were no other bids made on the Property. Accordingly, Liberty Bell would receive title to the Property unless Hillcrest Medical Plaza exercised its right of redemption by satisfying the full amount of the judgment within ten days following the sheriff's sale. No exercise of the right of redemption was expected to occur because WH Memorial Parkway Investors, L.L.C. was the managing member of Hillcrest Medical Plaza, and the Post-Foreclosure Agreement prohibited WH Memorial Parkway Investors, L.L.C. from taking actions that would delay or hinder Liberty Bell's acquisition of the Property.

40. At the time of the foreclosure proceedings, InMed had pending claims against Defendants WH Memorial Parkway, L.L.C., Warren Hospital and others in an unrelated litigation ("Hillcrest Litigation"). Subsequent to the sheriff's sale, the Defendants and InMed entered into a *quid pro quo* arrangement whereby Warren Hospital agreed to relinquish its ownership interest in

9

Hillcrest Medical Plaza and give InMed sole ownership of Hillcrest Medical Plaza and, in return, InMed agreed to dismiss all of its litigation claims against the Defendants in the Hillcrest Litigation.

41. In particular, a December 8, 2011 resolution by Hillcrest Medical Plaza, LLC appointing InMed as managing member of Hillcrest Medical Plaza, contains the following recital: "WHEREAS, on December 8, 2011, WH Memorial Parkway, LLC, assigned to the Company all of its right, title and interest in its membership interest in the Company..." (A copy of the December 8, 2011 resolution is attached hereto and incorporated herein as "Exhibit C..") Also on December 8, 2011, Hillcrest Medical Plaza exercised its right of redemption by paying the unpaid balance of the money owed under the judgment. (See December 8, 2011 letter from the Office of the Sheriff, a copy of which is attached hereto as "Exhibit D.")

42. Despite the clear terms of the Post-Foreclosure Agreement, and without disclosing the same to Liberty Bell, Defendants assisted InMed in obtaining sole ownership of Hillcrest Medical Plaza and arranging so that InMed could cause Hillcrest Medical Plaza to exercise Hillcrest Medical Plaza's right of redemption. Defendants thereby blocked a finalized foreclosure of the Property, forced Liberty Bell out of the benefit of its bargain under the Post-Foreclosure Agreement, and derailed Liberty Bell's acquisition of the Property while still receiving the benefits of the Post-Foreclosure Agreement needed to satisfy Defendants' obligations under the Definitive Agreement. In effect, Defendants had used the Post-Foreclosure Agreement to satisfy their obligations under the Definitive Agreement; after Defendants had received that benefit, and in order to resolve Defendants' litigation with InMed, Defendants

10

arranged for InMed to obtain the Property, and precluded Liberty Bell from receiving the benefit of the Post-Foreclosure Agreement.

43. On December 7, 2010, shortly before the 10-day redemption period following the sheriff's sale expired, counsel for Warren Hospital scheduled a telephone conference with members of Liberty Bell. During the telephone conference, Warren Hospital's in-house counsel, Mark Sblendorio, Esq. ("Sblendorio"), and Warren Hospital's outside counsel, Kevin Silverang, Esq. ("Silverang"), informed Liberty Bell that Warren Hospital had reached an agreement with InMed in order to resolve InMed's pending claims against Warren Hospital. Silverang and Sblendorio informed Liberty Bell that Warren Hospital's agreement with InMed would result in Hillcrest Medical Plaza exercising its right of redemption, with the logical inference that Liberty Bell therefore would not obtain title to the Property.

44. Silverang and Sblendorio inquired whether Liberty Bell would be satisfied with the sudden change in plans. Liberty Bell protested and immediately informed Silverang and Sblendorio that Liberty Bell wanted to move forward with the Post-Foreclosure Agreement and obtain title to the Property. At the end of the telephone conference, Liberty Bell stated to Silverang and Sblendorio, in clear and unambiguous terms, that Liberty Bell wanted to obtain the Property. However, despite owing contractual duties to Liberty Bell, Defendants, aided by Silverang and Sblendorio, proceeded with transferring their interests in Hillcrest Medical Plaza to InMed and in assisting InMed in obtaining the Property.

45. On December 8, 2011, Hillcrest Medical Plaza exercised its right of redemption by paying the unpaid balance of the money owed under the judgment. (Ex. D.)

46. Hillcrest Medical Plaza's redemption stopped Liberty Bell from obtaining title to the Property.

47. Without title to the Property, Liberty Bell was unable to assume its rights as landlord with respect to the various tenants and subtenants.

48. As a direct and proximate result of Defendants' conduct, Liberty Bell has suffered substantial damages.

## COUNT I
### Breach of Contract
**(Defendants Warren Hospital; WH Memorial Parkway Investors, L.L.C.; Warren Health Care Alliance, P.C.; Two Rivers Enterprises, Inc.)**

49. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

50. Liberty Bell entered into the Post-Foreclosure Agreement with Defendants Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C., and Two Rivers Enterprises, Inc.

51. The Post-Foreclosure Agreement was a legally valid and enforceable contract.

52. Under the Post-Foreclosure Agreement, Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C., and Two Rivers Enterprises, Inc. were contractually obligated to "consent to the Foreclosure Proceeding, any Sheriff's Sale, and to the extent that they have legal standing to do so, the Cash Collateral Actions and acknowledge and agree that sufficient legal justification exists for the Foreclosure Proceeding, any Sheriff's Sale, and the Cash Collateral Actions." (Ex. A, Art. 2.1.)

53. Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C., and Two Rivers Enterprises, Inc. were contractually obligated to "not contest,

cause the stay of, or otherwise delay the Foreclosure Proceeding, any Sheriff's Sale, or the Cash Collateral Actions." (Ex. A, Art. 2.1.)

54. Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C., and Two Rivers Enterprises, Inc. were contractually obligated to "take such actions in or with respect to the Foreclosure Proceeding, any Sheriff's Sale, or the Cash Collateral Actions as the Lender [Liberty Bell] may reasonably request to effectuate the terms and provisions and purposes of this Agreement." (Ex. A, Art. 2.1.)

55. Additionally, the implied duty of good faith and fair dealing that is read into every contract required Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C. and Two Rivers Enterprises, Inc. to treat Liberty Bell honestly, fairly, and in good faith.

56. Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C., and Two Rivers Enterprises, Inc. breached their contractual duties by interfering with the foreclosure proceeding; halting the completion of foreclosure; aiding in financing the debtor's redemption; and intentionally undermining Liberty Bell's purchase of the Property.

57. Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C., and Two Rivers Enterprises, Inc. breached their implied duty of good faith and fair dealing by: conveying their ownership interest in Hillcrest Medical Plaza to InMed so that InMed would gain control of Hillcrest Medical Plaza and arrange financing of Hillcrest Medical Plaza's right of redemption; blocking Liberty Bell's purchase of the Property from a finalized foreclosure; forcing Liberty Bell out of the benefit of its bargain under the Agreement; and derailing Liberty Bell's purchase of the Property by intentionally relinquishing their ownership

interest in Hillcrest Medical Plaza in order to facilitate Hillcrest Medical Plaza's exercise of its right of redemption.

58.  As a direct and proximate result of Defendants' conduct, Liberty Bell has suffered substantial damages.

**WHEREFORE,** Plaintiff demands judgment against Defendants, jointly and severally, in an amount in excess of Five Million Dollars ($5,000,000.00), plus interest, costs, and attorney fees, and such other relief as this Honorable Court may deem just and proper.

Respectfully submitted,
ALAN L. FRANK LAW ASSOCIATES, P.C.

_____
Alan L. Frank, Esq.
*Attorney for Plaintiff, Liberty Bell Capital II, L.P.*

Dated: September 11, 2013