**ALAN L. FRANK LAW ASSOCIATES, P.C.**
**Alan L. Frank, Esq.**
**135 Old York Road**
**Jenkintown, PA 19046**
**215-935-1000**
**215-935-1110 (fax)**
**afrank@alflaw.net**
**Attorneys for Plaintiff, Liberty Bell Capital II, L.P.**

| | |
|---|---|
| LIBERTY BELL CAPITAL II, L.P.<br>401 City Avenue, Suite 812<br>Bala Cynwyd, PA 19004<br><br>Plaintiff<br><br>v.<br><br>WARREN HOSPITAL<br>185 Roseberry Street<br>Phillipsburg, NJ 08865<br><br>and<br><br>WH MEMORIAL PARKWAY INVESTORS,<br>L.L.C.<br>185 Roseberry Street<br>Phillipsburg, NJ 08865<br><br>and<br><br>WARREN HEALTH CARE ALLIANCE, P.C.<br>185 Roseberry Street<br>Phillipsburg, NJ 08865<br><br>and<br><br>TWO RIVERS ENTERPRISES, INC.<br>185 Roseberry Street<br>Phillipsburg, NJ 08865<br><br>Defendants. | UNITED STATES DISTRICT<br>COURT FOR THE DISTRICT<br>OF NEW JERSEY - TRENTON<br>VICINAGE<br><br><br>CIVIL ACTION<br>Docket No.:<br>13-CV-04241-FLW-TJB<br><br>FIRST AMENDED COMPLAINT |

## FIRST AMENDED COMPLAINT



EXHIBIT
1
ALL-STATE LEGAL®

Plaintiff, Liberty Bell Capital II, L.P., by and through its undersigned counsel, Alan L. Frank, Esq. and the law firm of Alan L. Frank Law Associates, P.C., hereby brings this action against Defendants, Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C., and Two Rivers Enterprises, Inc., and in support thereof, respectfully sets forth as follows:

## PARTIES

1.    Plaintiff Liberty Bell Capital II, L.P. ("Plaintiff" or "Liberty Bell"), is a Delaware partnership. Each of the members of Liberty Bell resides in one of the following states: Pennsylvania, Michigan, New York, Washington, California, Florida, and Connecticut.

2.    Defendant Warren Hospital is a New Jersey corporation with its principal place of business at 185 Roseberry Street, Phillipsburg, NJ 08865.

3.    Defendant WH Memorial Parkway Investors, L.L.C. is a New Jersey limited liability company with its principal place of business at 185 Roseberry Street, Phillipsburg, NJ 08865. WH Memorial Parkway Investors, L.L.C.'s sole member is Two Rivers Enterprises, Inc.

4.    Defendant Two Rivers Enterprises, Inc. is a New Jersey corporation with its principal place of business at 185 Roseberry Street, Phillipsburg, NJ 08865.

5.    Defendant Warren Health Care Alliance, P.C. is a New Jersey corporation with a principal place of business at 185 Roseberry Street, Phillipsburg, NJ 08865.

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the amount in controversy exceeds Seventy Five Thousand Dollars ($75,000.00) exclusive of interest and costs and there is complete diversity of citizenship.

2

7.     Venue is proper under 28 U.S.C. § 1391(b)(1) because all defendants reside in this

district and § 1391(b)(2) because a substantial part of the events or omissions giving rise to this

claim occurred in this district.

## FACTS COMMON TO ALL COUNTS

### A.     Relationships Between and Among the Parties, Mortgage of the Subject Property, and Foreclosure Proceedings.

8.     This is a breach of contract action arising out of Defendants' breach of an agreement (the

"Post-Foreclosure Agreement").  A copy of the Post-Foreclosure Agreement is attached hereto

and incorporated herein as "Exhibit A."

9.     Non-party Hillcrest Medical Plaza, L.L.C. ("Hillcrest Medical Plaza") was a holding

company for the Property at 185 Roseberry Street, Phillipsburg, NJ 08865 (the "Property").

10.     Non-party InMed Investors, L.L.C. ("InMed") and Defendant WH Memorial Parkway

Investors, L.L.C. were each 50% members of Hillcrest Medical Plaza.

11.     Defendant WH Memorial Parkway Investors, L.L.C. was the sole managing member of

Hillcrest Medical Plaza and, thereby, the controlling member.

12.     Defendant Two Rivers Enterprises, Inc. is the sole member of WH Memorial Parkway

Investors, L.L.C.

13.     Defendants Two Rivers Enterprises, Inc. and Warren Health Care Alliance, P.C. are

affiliates of Defendant Warren Hospital.  Warren Hospital is the sole stockholder of Two Rivers

Enterprises, Inc.

14.     Hillcrest Medical Plaza's purchase of the Property was financed by a loan from Wells

Fargo in the amount of $12,300,000.00.

3

15.     Hillcrest Medical Plaza's obligations under the loan were secured by a mortgage of the Property in favor of Wells Fargo.

16.     Hillcrest Medical Plaza defaulted on its obligations under the loan by failing to make payments when due.

17.     Wells Fargo subsequently commenced legal proceedings under the mortgage and loan documents.

18.     Wells Fargo obtained a foreclosure judgment in its favor on July 11, 2011, in the action, *Wells Fargo Bank, N.A. v. Hillcrest Medical Plaza, L.L.C., et al*, in the Superior Court of New Jersey, Warren County, Chancery Division, Docket Number F-000468-11. The loan documents were merged into the foreclosure judgment.

19.     After the foreclosure judgment, but before the sheriff's sale, Liberty Bell purchased from Wells Fargo the debt of Hillcrest Medical Plaza, along with Wells Fargo's rights under the foreclosure judgment and the loan and mortgage on August 5, 2011.

20.     At that time of the foreclosure proceedings, multiple tenants leased and subleased portions of the Property under a complex arrangement of leases and subleases.

21.     Defendant Warren Hospital and non-party Hillcrest Medical Plaza were parties to a master lease agreement, under which Warren Hospital leased the entire Property from Hillcrest Medical Plaza.

22.     Warren Hospital in turn subleased the entire Property to Defendant WH Memorial Parkway Investors, L.L.C.

4

23.     WH Memorial Parkway Investors, L.L.C. in turn subleased portions of the Property to Defendants Warren Health Care Alliance, P.C., Two Rivers Enterprises, Inc. and Warren Hospital.

24.     In addition, WH Memorial Parkway, L.L.C. directly leased other portions of the Property to non-parties unaffiliated with Warren Hospital.

## B.     The Post-Foreclosure Agreement.

25.     The mortgage lien was of a superior priority relative to the interests of the tenants and subtenants of the Property.

26.     Accordingly, a foreclosure and sheriff's sale would cause the various leases and subleases to terminate by operation of law.

27.     At or around the time the foreclosure proceedings commenced, Warren Hospital had entered into a "Definitive Agreement" with non-party St. Luke's, under which St. Luke's would acquire Warren Hospital. (A copy of the Definitive Agreement is attached hereto and incorporated herein as "Exhibit B.") St. Luke's acquisition of Warren Hospital was essential to the survival of Warren Hospital because Warren Hospital did not have sufficient funds to meet its financial obligations.

28.     Under Article 10.5(a) of the Definitive Agreement between St. Luke's and Warren Hospital, St. Luke's acquisition of Warren Hospital was contingent upon Warren Hospital entering into a post foreclosure agreement with an entity that would acquire title to the Property, (Ex. B, page 51.), as termination of the leases and subleases would have caused a severe disruption to the tenants' medical services and businesses.

29.     In particular, Article 10.5(a) of the Definitive Agreement provides:

5

Either (i) the Hospital Entities (as defined in the Post-Foreclosure Agreement) and Wells Fargo shall have entered into the Post-Foreclosure Agreement; or (ii) Wells Fargo shall have sold the credit facility secured by HMP [Hillcrest Medical Plaza] to a party approved in writing by the Hospital Entities, and such party and the Hospital Entities shall have entered into an agreement which is identical in all material respects to the Post-Foreclosure Agreement; or (iii) at the foreclosure sale contemplated in the Post-Foreclosure Agreement, a third party bidder shall be the successful bidder for HMP, such bidder shall be approved in writing by the Hospital Entities, and such party and the Hospital Entities shall have entered into an agreement which is identical in all material respects to the Post-Foreclosure Agreement (such agreement or an agreement as described in clause (ii) of this subsection being referred to as a "Replacement Post-Foreclosure Agreement"); or (iv) the Hillcrest Litigation shall have been finally settled in a manner which provides to the Hospital Entities all of the rights and benefits of the Post-Foreclosure Agreement and is otherwise satisfactory to the [sic] St. Luke's in its discretion (the "Hillcrest Settlement").

(Ex. B, Page 51, Art. 10.5(a).)

30.     In order to avoid a disruption of the medical services and businesses and to comply with the requirements of the Definitive Agreement, Defendants Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C., and Two Rivers Enterprises, Inc. negotiated the Post-Foreclosure Agreement with Liberty Bell.

31.     Under the terms of the Post-Foreclosure Agreement, Defendants Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C., and Two Rivers Enterprises, Inc. agreed not to contest the foreclosure and sheriff's sale, and to provide all cooperation necessary to effect Liberty Bell's acquisition of the Property.

32.     In consideration therefore, Liberty Bell agreed to honor the leases that had been in place prior to the sheriff's sale if Liberty Bell were successful in acquiring the Property. Liberty Bell would become the owner of the Property and directly lease the Property to the tenants under the same material terms as those that existed prior to the sheriff's sale. In addition, Liberty Bell agreed to revise Warren Hospital's master lease to exclude the then-vacant portions of the

Property, and provide Warren Hospital with a rent reduction to reduce the financial strain on

Warren Hospital and relieve Warren Hospital of future payments of millions of dollars of future

rents in vacant space at the Property. Finally, Liberty Bell also agreed in the Post-Foreclosure

Agreement to relieve Warren Hospital of millions of dollars of past rental payments it had failed

to make to the landlord that were due and owing and, via the assignment of leases and rents,

were collateral for Liberty Bell in its foreclosure action on the Property.

33.     Under the terms of the Post-Foreclosure Agreement, Defendants Warren Hospital, WH

Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C., and Two Rivers

Enterprises, Inc. agreed to: "consent to the Foreclosure Proceeding, any Sheriff's Sale, and to the

extent that they have legal standing to do so, the Cash Collateral Actions and acknowledge and

agree that sufficient legal justification exists for the Foreclosure Proceeding, any Sheriff's Sale,

and the Cash Collateral Actions"; "not contest, cause the stay of, or otherwise delay the

Foreclosure Proceeding, any Sheriff's Sale, or the Cash Collateral Actions"; and "take such

actions in or with respect to the Foreclosure Proceeding, any Sheriff's Sale, or the Cash

Collateral Actions as the Lender [Liberty Bell] may reasonably request to effectuate the terms

and provisions and purposes of this Agreement." (Ex. A, Page 5, Art. 2.1.)

34.     In particular, Article 2.1 of the Post-Foreclosure Agreement provides:

> WH Memorial and the Hospital Entities hereby consent to the Foreclosure
> Proceeding, any Sheriff's Sale, and, to the extent that they have legal standing to
> do so, the Cash Collateral Actions and acknowledge and agree that sufficient legal
> justification exists for the Foreclosure Proceeding, any Sheriff's Sale, and the
> Cash Collateral Actions. WH Memorial and the Hospital Entities shall not
> contest, cause the stay of, or otherwise delay the Foreclosure Proceeding, any
> Sheriff's Sale, or the Cash Collateral Actions. WH Memorial and the Hospital
> Entities shall take such actions in or with respect to the Foreclosure Proceeding,
> any Sheriff's Sale, or the Cash Collateral Actions as the Lender may reasonably
> request to effectuate the terms and provisions and purposes of this Agreement.

(Ex. A, Page 5, Art. 2.1.)

35.    The Post-Foreclosure Agreement further provides:

     4.2    WH Memorial and the Hospital Entities acknowledge and agree that Lender's obligations under Sections 3.2 and 3.3 [concerning Liberty Bell's honoring leases and subleases, and reduction of Warren Hospital's rent obligations] of this Agreement are conditioned upon the satisfaction of the following (the "Conditions"): (a) Borrower refraining from contesting, causing the stay of, or otherwise delaying the Foreclosure Proceeding or Cash Collateral Actions; (b) SLHN [St. Luke's Health Network, Inc.] completing closing the transactions contemplated under and in accordance with the St. Luke's Definitive Agreement (the "Transaction"), and (c) no Agreed Rent being past due and owing. In the event that Hospital or SLHN shall definitively determine not to proceed with the Transaction, the same shall be deemed a failure of the Conditions and Hospital shall immediately provide written notice of the same to Lender.

(Ex. A, Pages 7-8, Art. 4.2.)

36.    The Post-Foreclosure Agreement further provides:

     5.1    **Binding Effect.** This Agreement shall be binding on, and inure to the benefit of, the Lender, WH Memorial, and the Hospital Entities and their respective successors and assigns... To induce Lender to enter into this Agreement, WH Memorial and the Hospital Entities represent and warrant to Lender that (a) they have the right, power, and authority and have taken all necessary corporate or other organizational action to duly authorize the execution, delivery, implementation, and performance of and compliance with this Agreement and all agreements, instruments, and documents executed or delivered by them or any of them pursuant hereto or in connection herewith, and (b) the execution and delivery of this Agreement and all agreements, instruments, and documents executed or delivered by them or any of them pursuant hereto or in connection herewith will not conflict with or result in a breach of the terms or conditions of the organizational documents of WH Memorial or the Hospital Entities or any agreement to which WH Memorial or a Hospital Entity is a party.

(Ex. A, Pages 8-9, Art. 5.1.)

37.     Further, the Post-Foreclosure Agreement between Defendants and Liberty Bell satisfied the Defendants' requirement under Article 10.5(a) of the Definitive Agreement between St. Luke's and Warren Hospital.

## C.    Defendants Affirmatively Acted to Undermine the Agreement by Allowing InMed to Gain Control of the Debtor's Right of Redemption.

38.     Defendant WH Memorial Parkway, L.L.C., as the sole managing member of Hillcrest Medical Plaza, shared the executed Post-Foreclosure Agreement with non-party InMed Investors, LLC ("InMed"), the other member of Hillcrest Medical Plaza. As the managing member of Hillcrest Medical Plaza, Defendant WH Memorial Parkway Investors, L.L.C. held the sole and exclusive discretion to manage, essentially, all of the affairs and business activities of Hillcrest Medical Plaza, without any consent or approval being required from InMed.

39.     The sheriff's sale was held on November 28, 2011. At the sheriff's sale, there were no other bids made on the Property. Accordingly, Liberty Bell would receive title to the Property unless Hillcrest Medical Plaza exercised its right of redemption by satisfying the full amount of the judgment within ten days following the sheriff's sale. No exercise of the right of redemption was expected to occur because WH Memorial Parkway Investors, L.L.C. was the managing member of Hillcrest Medical Plaza, and the Post-Foreclosure Agreement prohibited WH Memorial Parkway Investors, L.L.C. from taking actions that would delay or hinder Liberty Bell's acquisition of the Property.

40.     At the time of the foreclosure proceedings, InMed had pending claims against Defendants WH Memorial Parkway, L.L.C., Warren Hospital and others in an unrelated litigation ("Hillcrest Litigation"). Subsequent to the sheriff's sale, the Defendants and InMed entered into a *quid pro quo* arrangement whereby Warren Hospital agreed to relinquish its ownership interest in

9

Hillcrest Medical Plaza and give InMed sole ownership of Hillcrest Medical Plaza and, in return, InMed agreed to dismiss all of its litigation claims against the Defendants in the Hillcrest Litigation.

41.     In particular, a December 8, 2011 resolution by Hillcrest Medical Plaza, LLC appointing InMed as managing member of Hillcrest Medical Plaza, contains the following recital: "WHEREAS, on December 8, 2011, WH Memorial Parkway, LLC, assigned to the Company all of its right, title and interest in its membership interest in the Company..." (A copy of the December 8, 2011 resolution is attached hereto and incorporated herein as "Exhibit C..") Also on December 8, 2011, Hillcrest Medical Plaza exercised its right of redemption by paying the unpaid balance of the money owed under the judgment. (See December 8, 2011 letter from the Office of the Sheriff, a copy of which is attached hereto as "Exhibit D.")

42.     Despite the clear terms of the Post-Foreclosure Agreement, and without disclosing the same to Liberty Bell, Defendants assisted InMed in obtaining sole ownership of Hillcrest Medical Plaza and arranging so that InMed could cause Hillcrest Medical Plaza to exercise Hillcrest Medical Plaza's right of redemption. Defendants thereby blocked a finalized foreclosure of the Property, forced Liberty Bell out of the benefit of its bargain under the Post-Foreclosure Agreement, and derailed Liberty Bell's acquisition of the Property while still receiving the benefits of the Post-Foreclosure Agreement needed to satisfy Defendants' obligations under the Definitive Agreement. In effect, Defendants had used the Post-Foreclosure Agreement to satisfy their obligations under the Definitive Agreement; after Defendants had received that benefit, and in order to resolve Defendants' litigation with InMed, Defendants

10

arranged for InMed to obtain the Property, and precluded Liberty Bell from receiving the benefit of the Post-Foreclosure Agreement.

43.     On December 7, 2010, shortly before the 10-day redemption period following the sheriff's sale expired, counsel for Warren Hospital scheduled a telephone conference with members of Liberty Bell. During the telephone conference, Warren Hospital's in-house counsel, Mark Sblendorio, Esq. ("Sblendorio"), and Warren Hospital's outside counsel, Kevin Silverang, Esq. ("Silverang"), informed Liberty Bell that Warren Hospital had reached an agreement with InMed in order to resolve InMed's pending claims against Warren Hospital. Silverang and Sblendorio informed Liberty Bell that Warren Hospital's agreement with InMed would result in Hillcrest Medical Plaza exercising its right of redemption, with the logical inference that Liberty Bell therefore would not obtain title to the Property.

44.     Silverang and Sblendorio inquired whether Liberty Bell would be satisfied with the sudden change in plans. Liberty Bell protested and immediately informed Silverang and Sblendorio that Liberty Bell wanted to move forward with the Post-Foreclosure Agreement and obtain title to the Property. At the end of the telephone conference, Liberty Bell stated to Silverang and Sblendorio, in clear and unambiguous terms, that Liberty Bell wanted to obtain the Property. However, despite owing contractual duties to Liberty Bell, Defendants, aided by Silverang and Sblendorio, proceeded with transferring their interests in Hillcrest Medical Plaza to InMed and in assisting InMed in obtaining the Property.

45.     On December 8, 2011, Hillcrest Medical Plaza exercised its right of redemption by paying the unpaid balance of the money owed under the judgment. (Ex. D.)

11

46.     Hillcrest Medical Plaza's redemption stopped Liberty Bell from obtaining title to the Property.

47.     Without title to the Property, Liberty Bell was unable to assume its rights as landlord with respect to the various tenants and subtenants.

48.     As a direct and proximate result of Defendants' conduct, Liberty Bell has suffered substantial damages.

## COUNT I
### Breach of Contract
**(Defendants Warren Hospital; WH Memorial Parkway Investors, L.L.C.; Warren Health Care Alliance, P.C.; Two Rivers Enterprises, Inc.)**

49.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

50.     Liberty Bell entered into the Post-Foreclosure Agreement with Defendants Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C., and Two Rivers Enterprises, Inc.

51.     The Post-Foreclosure Agreement was a legally valid and enforceable contract.

52.     Under the Post-Foreclosure Agreement, Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C., and Two Rivers Enterprises, Inc. were contractually obligated to "consent to the Foreclosure Proceeding, any Sheriff's Sale, and to the extent that they have legal standing to do so, the Cash Collateral Actions and acknowledge and agree that sufficient legal justification exists for the Foreclosure Proceeding, any Sheriff's Sale, and the Cash Collateral Actions." (Ex. A, Art. 2.1.)

53.     Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C., and Two Rivers Enterprises, Inc. were contractually obligated to "not contest,

12

cause the stay of, or otherwise delay the Foreclosure Proceeding, any Sheriff's Sale, or the Cash Collateral Actions." (Ex. A, Art. 2.1.)

54.     Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C., and Two Rivers Enterprises, Inc. were contractually obligated to "take such actions in or with respect to the Foreclosure Proceeding, any Sheriff's Sale, or the Cash Collateral Actions as the Lender [Liberty Bell] may reasonably request to effectuate the terms and provisions and purposes of this Agreement." (Ex. A, Art. 2.1.)

55.     Additionally, the implied duty of good faith and fair dealing that is read into every contract required Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C. and Two Rivers Enterprises, Inc. to treat Liberty Bell honestly, fairly, and in good faith.

56.     Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C., and Two Rivers Enterprises, Inc. breached their contractual duties by interfering with the foreclosure proceeding; halting the completion of foreclosure; aiding in financing the debtor's redemption; and intentionally undermining Liberty Bell's purchase of the Property.

57.     Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C., and Two Rivers Enterprises, Inc. breached their implied duty of good faith and fair dealing by: conveying their ownership interest in Hillcrest Medical Plaza to InMed so that InMed would gain control of Hillcrest Medical Plaza and arrange financing of Hillcrest Medical Plaza's right of redemption; blocking Liberty Bell's purchase of the Property from a finalized foreclosure; forcing Liberty Bell out of the benefit of its bargain under the Agreement; and derailing Liberty Bell's purchase of the Property by intentionally relinquishing their ownership

13

interest in Hillcrest Medical Plaza in order to facilitate Hillcrest Medical Plaza's exercise of its right of redemption.

58.     As a direct and proximate result of Defendants' conduct, Liberty Bell has suffered substantial damages.

**WHEREFORE,** Plaintiff demands judgment against Defendants, jointly and severally, in an amount in excess of Five Million Dollars ($5,000,000.00), plus interest, costs, and attorney fees, and such other relief as this Honorable Court may deem just and proper.

Respectfully submitted,
ALAN L. FRANK LAW ASSOCIATES, P.C.

Alan L. Frank, Esq.
*Attorney for Plaintiff, Liberty Bell Capital II, L.P.*

Dated: September 11, 2013

14

Case 3:13-cv-04241-FLW-TJB   Document 19-2   Filed 10/21/13   Page 15 of 32 PageID: 530
Case 3:13-cv-04241-FLW-T   Document 17-1   Filed 09/12/13   Page 1 of 18 PageID: 306
Case 3:13-cv-04241-FLW-TJB   Document 1-3   Filed 07/11/13   Page 1 of 18 PageID: 90

## POST-FORECLOSURE AGREEMENT RESPECTING STATUS OF LEASES

This POST-FORECLOSURE AGREEMENT RESPECTING STATUS OF LEASES (this "Agreement") is made this 2nd day of October 2011 by and among WARREN HOSPITAL, a New Jersey non-profit corporation (the "Hospital"), WH MEMORIAL PARKWAY INVESTORS, L.L.C., a New Jersey limited liability company ("WH Memorial"), WARREN HEALTH CARE ALLIANCE, P.C., a New Jersey corporation ("WHCA"), TWO RIVERS ENTERPRISES, INC., a New Jersey corporation ("Two Rivers" and, together with the Hospital and WHCA, collectively, the "Hospital Entities" and, individually, each a "Hospital Entity"), and LIBERTY BELL CAPITAL II, L.P., a Delaware limited partnership ("Lender").

## R E C I T A L S

A.  Wells Fargo Bank, N.A. ("Original Lender") and Hillcrest Medical Plaza, L.L.C., a New Jersey limited liability company ("Borrower"), were parties to that certain Letter of Credit and Reimbursement Agreement, dated as of September 5, 2003, as amended by that certain First Amendment to Letter of Credit and Reimbursement Agreement dated as of February 25, 2009, that certain Second Amendment to Letter of Credit and Reimbursement Agreement dated as of October 7, 2009, and that certain letter agreement dated January 13, 2010 (as further amended or otherwise modified from time to time, the "Reimbursement Agreement").

B.  K.R.Hillcrest Mall LLC ("KRH") was the owner of certain real property located at the intersection of U.S. Route 22 West and Roseberry Street in Phillipsburg, Warren County, New Jersey, having a physical address of 185 Roseberry Street, Phillipsburg, New Jersey 08865 (the "Original Land", and together with all of the improvements constructed thereon, the "Original Property"). Pursuant to the terms of that certain Master Deed and Declaration of Restrictive and Protective Covenants, Easements, Charges and Liens for Hillcrest Condominium dated September 3, 2003 (the "Master Deed"), KRH, as declarant, submitted the Land to a condominium regime, whereby six (6) condominium units and appurtenant common elements were established (hereinafter collectively referred to as the "Condominium"). For purposes of this Agreement, the aforementioned condominium units are sometimes referred to herein individually as a "Unit" and collectively as the "Units". Further, the office and retail buildings which are located within and/or comprise the Units, as now existing and/or as may be erected hereafter from time to time, are collectively referred to herein as the "Buildings".

C.  Borrower acquired title to three of the Units, being Units B, C and D (the "Property"), originally comprising 161,404 square feet of space. Borrower subsequently sold certain portions of the Units to third parties such that the Property currently consists of 141,557 square feet of space, all as more particularly described on **Exhibit A** attached hereto and incorporated herein.

D.  Borrower's obligations under the Reimbursement Agreement were secured by, inter alia, that certain Mortgage and Security Agreement dated September 5, 2003, executed by Borrower in favor of Original Lender, with respect to the Property (the "Mortgage", and, together with the Reimbursement Agreement and all other documents and instruments executed in connection therewith, the "Loan Documents"). Unless otherwise provided,

{00179862;20}

PH2 1042614v2 10/07/11


EXHIBIT
A

Case 3:13-cv-04241-FLW-TJB Document 19-2 Filed 10/21/13 Page 16 of 32 PageID: 531
Case 3:13-cv-04241-FLW-TJB Document 17-1 Filed 09/12/13 Page 2 of 18 PageID: 307
·Case 3:13-cv-04241-FLW-TJB Document 1-3 Filed 07/11/13 Page 2 of 18 PageID: 91

capitalized terms contained but not defined herein have the meanings given to such terms in the Loan Documents.

E. An Event of Default occurred under the Reimbursement Agreement and other Loan Documents as a result of Borrower's failure to pay, satisfy, and perform the Obligations in full on their stated maturity of February 15, 2010 (the "Existing Event of Default"). 'Borrower requested that Original Lender forbear from exercising its rights and remedies under the Loan Documents, at law and in equity, based on the Existing Event of Default for a limited period of time. Original Lender agreed to do so under the terms of and subject to the conditions set forth in that certain Forbearance Agreement dated June 2, 2010, by and between Borrower and Original Lender (the "First Forbearance Agreement").

F. Original Lender's agreement to forbear from exercising its rights and remedies based on the · Existing Event of Default pursuant to the terms of the First Forbearance Agreement terminated on July 31, 2010. Upon such termination, Borrower requested that Original Lender extend its agreement to forbear from exercising its rights and remedies under the Loan Documents based on the Existing Event of Default for a limited period of time. Original Lender agreed to do so under the terms of and subject to the conditions set forth in that certain Second Forbearance Agreement dated August 3, 2010, by and between Borrower and Original Lender (the "Second Forbearance Agreement").

G. Original Lender's agreement to forbear from exercising its rights and remedies based on the Existing Event of Default pursuant to the terms of the Second Forbearance Agreement terminated on September 30, 2010. Original Lender advised Borrower that it was unwilling to extend its agreement to forbear from exercising its rights and remedies under the Loan Documents based on the Existing Event of Default any further at this time. As a result, Original Lender commenced proceedings under the Mortgage and other Loan Documents to foreclose on the Property. A Foreclosure Judgment was obtained July 11, 2011, in the mortgage foreclosure action entitled *Wells Fargo Bank, N.A. v. Hillcrest Medical Plaza, L.L.C., et als,* filed in the Superior Court of New Jersey, Warren County, Chancery Division, bearing Docket No. F-000468-11 (the "Foreclosure Judgment"), and the Loan Documents were merged into the Foreclosure Judgment.

H. Original Lender and Lender have entered into an agreement pursuant to which Original Lender agreed to sell to Lender the Borrower's indebtedness under the Loan Documents (the "Loan") and assign the Loan Documents, the Foreclosure Judgment and all rights thereunder to Lender (the "Loan Purchase Agreement"). Closing under the Loan Purchase Agreement occurred on August 5, 2011, and a judicial sale of the Property is pending.

I. Pursuant to the terms of that certain Master Lease Agreement dated September 5, 2003, by and between Borrower, as landlord, and the Hospital, as tenant (the "Master Lease"), the Hospital leases the entire Property containing in total approximately 141,657 square feet of space. A true and correct copy of the Master Lease as amended from time to time is attached hereto and incorporated herein as Exhibit B.

J. Pursuant to the terms of that certain Master Sublease Agreement dated September 5, 2003, by and between the Hospital, as sublessor, and WH Memorial, as sublessee (the "Master Sublease"), WH Memorial subleases the Property from the Hospital. A true and correct

{00179862;20}

PH2 1042614v2 10/07/11

Page 2 of 24

Case 3:13-cv-04241-FLW-TJB   Document 19-2   Filed 10/21/13   Page 17 of 32 PageID: 532
Case 3:13-cv-04241-FLW-TJB   Document 17-1   Filed 09/12/13   Page 3 of 18 PageID: 308
Case 3:13-cv-04241-FLW-TJB   Document 1-3   Filed 07/11/13   Page 3 of 18 PageID: 92

copy of the Master Sublease as amended from time to time is attached hereto and incorporated herein as <u>Exhibit C</u>. WH Memorial is an affiliate of the Hospital.

K. WH Memorial currently subleases certain portions of the Property (the "<u>Current Hospital Premises</u>") to the Hospital Entities, pursuant to various subleases (the "<u>Hospital Subleases</u>") between WH Memorial, as sublessor, and the respective Hospital Entities, as sublessees. The Current Hospital Premises consists of approximately 53,188 square feet of space. A true and correct rent roll which describes each Hospital Sublease and identifies the Hospital Entity thereunder is attached hereto and incorporated herein as <u>Exhibit D</u> (the "<u>Rent Roll</u>") (provided, however, that the information contained in the Rent Roll is not deemed to modify or supersede the terms of the Hospital Subleases and/or Third Party Subleases (as hereinafter defined) and in the event of any conflict between the Rent Roll and the Hospital Subleases and/or Third Party Subleases, the terms set forth in the Hospital Subleases and Third Party Subleases shall control).

L. WH Memorial subleases other portions of the Property (the "<u>Third Party Premises</u>") to certain unaffiliated third party medical practice groups and non-medical users (collectively, the "<u>Third Party Subtenants</u>" and, together with the Hospital Entities, the "<u>Subtenants</u>") pursuant to certain sublease agreements (collectively, the "<u>Third Party Subleases</u>" and, together with the Hospital Subleases, the "<u>Subleases</u>") between WH Memorial, as sublessor, and the Third Party Subtenants, as sublessees. The Third Party Premises consists of approximately 34,032 square feet of space. A true and correct rent roll which describes each Third Party Sublease and identifies the Third Party Subtenant thereunder is set forth on the Rent Roll.

M. Borrower directly leases a portion of the Property (the "<u>Concurrently Leased Portion</u>") to, (i) A. Nicolosi Pizzeria, Inc., a New Jersey corporation ("<u>Pizzeria</u>"), pursuant to that certain Lease Agreement, dated September 8, 1993, as amended or otherwise modified (the "<u>Pizzeria Lease</u>"), entered into by and between Pizzeria, as tenant, and Borrower, as landlord, and (ii) Stephen J. Price, an adult individual ("<u>S. Price</u>"), Dominick J. Vangeli, Jr., an adult individual ("<u>D. Vangeli</u>"), and Hillcrest Barber Shop, L.L.C., New Jersey a limited liability company ("<u>Barber Shop</u>"), pursuant to that certain Lease Agreement, dated August 1, 1988, as amended or otherwise modified (the "<u>Barber Shop Lease</u>"), entered into by and among S, Price, D. Vangeli, and Barber Shop, as tenants, and Borrower, as landlord. The Barber Shop Lease and the Pizzeria Lease are sometimes referred to collectively herein as the "<u>Concurrent Leases</u>." The definition of "Third Party Premises" shall include the Concurrently Leased Portion. The definition of "Third Party Subtenants" shall include Pizzeria, S. Price, D. Vangeli, and Barber Shop. The definition of "Third Party Subleases" shall include the Concurrent Leases.

N. [Intentionally Omitted].

O. In total, the Subtenants currently occupy approximately 86,545 square feet of the Property under the Subleases (the "<u>Occupied Premises</u>"). That portion of the Property exclusive of the Current Hospital Premises and the Third Party Premises is referred to herein as the "<u>Vacant Premises</u>".

{00179862;20}

PH2 1042614v2 10/07/11

Page 3 of 24

Case 3:13-cv-04241-FLW-TJB Document 19-2 Filed 10/21/13 Page 18 of 32 PageID: 533
Case 3:13-cv-04241-FLW-TJB Document 17-1 Filed 09/12/13 Page 4 of 18 PageID: 309
Case 3:13-cv-04241-FLW-TJB Document 1-3 Filed 07/11/13 Page 4 of 18 PageID: 93

P. WH Memorial and the Hospital Entities hereby acknowledge and agree that the leasehold interests established pursuant to the Master Lease, Master Sublease, and Subleases constitute inferior estates relative to the priority of the lien of the Mortgage.

Q. Lender is prosecuting a foreclosure proceeding under the Mortgage (the "Foreclosure Proceeding") and exercised its security interest in a control account (the "Control Account") in which Borrower held approximately $1,300,000 as required by the Loan Documents and took possession of the sums therein (the "Cash Collateral Actions"). WH Memorial and the Hospital Entities believe it is in the collective best interests of the Hospital Entities and Third Party Subtenants that WH Memorial and the Hospital Entities enter into this Agreement because a sheriff's sale of the Property resulting from the Foreclosure Proceeding (a "Sheriff's Sale") will cause the Master Lease and Master Sublease to terminate by operation of law on account of the foreclosure and, absent this Agreement, such terminations could result in a severe disruption of the operations of the Hospital Entities and the provision of medical care by the Hospital Entities and the various medical practices which are run by the Third Party Subtenants. Accordingly, WH Memorial, the Hospital Entities, and Lender wish to enter into this Agreement pursuant to which (i) WH Memorial and the Hospital Entities consent to and shall not contest, stay, or otherwise delay the Foreclosure Proceeding, the Sheriff's Sale, or the Cash Collateral Actions, (ii) WH Memorial and the Hospital will, subject to the terms and conditions of this Agreement, and simultaneously with the execution of this Agreement cause the Hospital Entities and the Third Party Subtenants to enter into non-disturbance and attornment agreements (each an "NDA" and collectively the "NDA's") with Lender whereby, in the event Lender acquires the Property at the Sheriff's Sale, each of the Hospital Subleases and Third Party Subleases will become direct leases with Lender, as landlord, and each of the Hospital Entities and Third Party Subtenants will attorn to Lender as landlord thereunder under their respective Hospital Subleases or Third Party Subleases, as applicable (and the Hospital Subleases will be guaranteed by the Hospital), all on the terms and conditions set forth herein.

R. The parties also acknowledge that, pursuant to the terms of a certain definitive agreement (the "St. Luke's Definitive Agreement"), the Hospital is currently under contract with St. Luke's Health Network, Inc. ("SLHN") regarding a potential transaction involving, *inter alia*, the acquisition of the assets of the Hospital by SLHN. A true and correct copy of the St. Luke's Definitive Agreement is attached hereto as Exhibit F. Lender acknowledges that SLHN is currently conducting its due diligence review of the Hospital and its business operations and that SLHN's obligation to proceed with and consummate closing on the transaction contemplated by the St. Luke's Definitive Agreement will be conditioned upon, among other things, Lender, WH Memorial, and the Hospital Entities entering into this Agreement, the occurrence of the Title Acquisition Date and the consummation of the transactions contemplated herein to ensure that essential operations of the Hospital are not disrupted by the known plan of action of Lender with respect to the Property. Therefore, Lender has agreed to enter into this Agreement to clarify the status of the Master Lease, Master Sublease, and Subleases post-foreclosure as well as to satisfy said condition set forth in the St. Luke's Definitive Agreement.

NOW THEREFORE, for good and valuable consideration, and in consideration of the respective benefits conferred upon Lender, WH Memorial, and the Hospital Entities as set forth above, the Hospital Entities, WH Memorial, and Lender hereby agree as follows:

{00179862;20}

PH2 1042814v2 10/07/11

Page 4 of 24

Case 3:13-cv-04241-FLW-TJB Document 19-2 Filed 10/21/13 Page 19 of 32 PageID: 534
Case 3:13-cv-04241-FLW-TJB Document 17-1 Filed 09/12/13 age 5 of 18 PageID: 310
Case 3:13-cv-04241-FLW-TJB Document 1-3 Filed 07/11/13 Page 5 of 18 PageID: 94

1. <u>Definitions</u>. In addition to such other capitalized terms as are defined in other Sections of this Agreement, the following terms (which appear in this Agreement as capitalized terms) shall have the meanings ascribed to them in this Section 1.

   1.1 "<u>Title Acquisition Date</u>" shall mean the date on which Lender (or its affiliate nominee) receives a recorded sheriff's deed for the Property under which Lender (or its affiliate nominee) acquires title to the Property as a result of a Sheriff's Sale.

2. <u>No Contest; Communication with Consultant</u>.

   2.1 WH Memorial and the Hospital Entities hereby consent to the Foreclosure Proceeding, any Sheriff's Sale, and, to the extent that they have legal standing to do so, the Cash Collateral Actions and acknowledge and agree that sufficient legal justification exists for the Foreclosure Proceeding, any Sheriff's Sale, and the Cash Collateral Actions. WH Memorial and the Hospital Entities shall not contest, cause the stay of, or otherwise delay the Foreclosure Proceeding, any Sheriff's Sale, or the Cash Collateral Actions. WH Memorial and the Hospital Entities shall take such actions in or with respect to the Foreclosure Proceeding, any Sheriff's Sale, or the Cash Collateral Actions as the Lender may reasonably request to effectuate the terms and provisions and purposes of this Agreement.

   2.2 WH Memorial and the Hospital Entities hereby agree that Lender may communicate with Health Realty Advisors, and hereby authorize Health Realty Advisors to communicate with Lender and provide information requested by Lender regarding the Property and the operation thereof.

3. <u>THE LEASES</u>.

   3.1 <u>Prior Lien</u>. WH Memorial and the Hospital Entities acknowledge and agree that the lien created by the Mortgage in favor of Lender securing Borrower's obligations to Lender under the Loan Documents against the Property, and any modifications, renewals, or extensions thereof, constitutes a prior and superior lien relative to the inferior leasehold estates created with respect to the Property by the Master Lease, Master Sublease, and Subleases. Lender, the Hospital and WH Memorial acknowledge and agree that any Sheriff's Sale will cause the Master Lease and the Master Sublease to terminate by operation of law on account of the foreclosure, and in the event Lender acquires the Property at the Sheriff's Sale, the Subleases will become direct leases between the Lender and the respective Subtenants by the terms of the NDA's.

   3.2 <u>Master Lease, Master Sublease & Hospital Subleases</u>. The Lender has agreed to waive, under certain terms and conditions, any rights it may have to certain rent with respect to the Vacant Premises without waiving or otherwise affecting rent with respect to the Occupied Premises, and the parties, therefore, hereby agree as follows:

       (a) <u>NDA's: Continuing Obligation to Pay Rent</u>. Each of the Hospital Entities has, concurrently with the execution of this Agreement, executed and delivered to Lender an NDA. Accordingly, from the date hereof until the

Case 3:13-cv-04241-FLW-TJB   Document 19-2   Filed 10/21/13   Page 20 of 32 PageID: 535
Case 3:13-cv-04241-FLW-TJB   Document 17-1   Filed 09/12/13   Page 6 of 18 PageID: 311
Case 3:13-cv-04241-FLW-TJB   Document 1-3   Filed 07/11/13   Page 6 of 18 PageID: 95

Conditions (as hereinafter defined) have been satisfied, and Lender and the Hospital Entities have entered into the Hospital Lease Amendments, as defined in Section 3.3, Hospital and each other Hospital Entity shall pay rent to Lender, as landlord, under the Hospital Subleases in accordance with the terms of such Hospital Subleases (the "Agreed Rent").

(b) **Waiver of Past Due Amounts and Other Liabilities.** Lender acknowledges and agrees that, in the event (i) the Conditions have been satisfied and Lender and the Hospital Entities enter into the Hospital Lease Amendments, as described in Section 3.3, or (ii) Lender is not the winning bidder at the Sheriff's Sale ("Release Effective Time") (A) any security interest held by Lender in any rents due and owing under the Master Lease, Master Sublease, or Hospital Subleases other than Agreed Rent that is due and owing ("Waived Rent") shall be deemed to have been terminated, (B) Lender shall be deemed to have waived any such security interest and any rights to collect such Waived Rent from the Hospital Entities or WH Memorial, (C) Lender shall take such actions as reasonably necessary to terminate such security interests against such parties, and (D) Lender shall not seek to collect any arrearages or other sums purportedly due and owing under the Master Lease or Master Sublease or any other agreement (other than Agreed Rent that is due and owing) by the Hospital, as master tenant or otherwise, or WH Memorial, as sub-master tenant or otherwise, or any other Hospital Entity either directly or indirectly under any legal theory at law or in equity. For the avoidance of doubt, Lender, WH Memorial, and the Hospital Entities acknowledge, confirm and agree that the foregoing in no way limits, alters, or otherwise modifies Lender's rights to collect from Borrower any and all amounts owed to Lender by Borrower under or with respect to the Loan Documents.

(c) **Mutual Release.** Effective as of the Release Effective Time, except with respect to Waived Rent (which claims are to be released as and to the extent set forth in Section 3.2(b) above) and other than for Agreed Rent, Lender hereby releases WH Memorial and the Hospital Entities from any and all rights, claims, and causes of action, whether now known or unknown, asserted or unasserted, contingent or liquidated, or at law or in equity, which Lender ever had, now has, may have, or claim to have against WH Memorial or any of the Hospital Entities for or by reason of or relating to any aspect of the Master Lease, Master Subleases, Hospital Subleases, and Loan Documents. Effective as of the Release Effective Time, WH Memorial and each Hospital Entity hereby releases Lender from any and all rights, claims, and causes of action, whether now known or unknown, asserted or unasserted, contingent or liquidated, or at law or in equity, which WH Memorial or any Hospital Entity ever had, now has, may have, or claim to have against Lender for or by reason of or relating to any aspect of the Master Lease, Master Subleases, Hospital Subleases, and Loan Documents. For the avoidance of doubt, Lender, WH Memorial, and the Hospital Entities acknowledge, confirm and agree that the foregoing in no way limits, alters, or otherwise modifies Lender's rights to collect from Borrower any and all

Case 3:13-cv-04241-FLW-TJB  Document 19-2  Filed 10/21/13  Page 21 of 32 PageID: 536
Case 3:13-cv-04241-FLW-TJB  Document 17-1  Filed 09/12/13  Page 7 of 18 PageID: 312
Case 3:13-cv-04241-FLW-TJB  Document 1-3  Filed 07/11/13  Page 7 of 18 PageID: 96

amounts owed to Lender by Borrower under or with respect to the Loan Documents.

3.3 **Hospital Lease Amendments.** Lender and the Hospital Entities acknowledge and agree that upon the satisfaction of the Conditions, Lender and the Hospital Entities shall promptly enter into amendments to each of the Hospital Subleases (each such amendment a "Hospital Lease Amendment", and collectively, the "Hospital Lease Amendments"). Each Hospital Lease Amendment shall (i) substitute Lender as the landlord under the applicable Hospital Sublease, (ii) provide any such Hospital Subleases with entities other than the Hospital shall be joined in by the Hospital and (iii) incorporate the terms set forth on **Exhibit I** attached to this Agreement. Lender and the Hospital Entities shall negotiate in good faith with respect to the form and other terms of the Hospital Lease Amendments, which shall be mutually acceptable to the parties. The parties shall use their best efforts to agree upon a proposed form of Hospital Lease Amendment within thirty (30) days of the date hereof.

3.4 **NDA's.** The parties acknowledge and agree that (a) the Hospital Entities and WH Memorial have caused or will cause, prior to the Sheriff's Sale, each of the Subtenants to execute and deliver to Lender NDA's on terms acceptable to Lender, and (b) the Hospital has executed and delivered to Lender a joinder of each Hospital Entity's obligations under its Hospital Sublease (other than those Subleases under which Hospital is the Subtenant) (collectively, the "Initial Hospital Joinders").

3.5 **Failure of Conditions.** Notwithstanding anything to the contrary contained herein, in the event any of the Conditions are not satisfied, then the obligations and agreements of Lender set forth in Sections 3.2 and 3.3 above including, without limitation, the waivers and releases set forth in Section 3.2(b) and Section 3.2(c) above, shall be void and of no force or effect and the Subleases shall continue in full force and effect as direct leases between Lender, as landlord, and the Sublessees, as tenant, pursuant to the NDA's.

## 4. SLHN TRANSACTION; LOAN ACQUISITION.

4.1 The parties acknowledge that, as a condition to its acquisition of the Hospital, SLHN requires, among other things, the termination of the Master Lease, Master Sublease, and Subleases and entry into direct leases by and between Lender and the Hospital Entities and/or the Third Party Subtenants as contemplated herein (the "Hillcrest Mall Condition Precedent"). By executing the attached Acknowledgement and Consent, SLHN is acknowledging that this Agreement is satisfactory to SLHN and that the Hillcrest Mall Condition Precedent to SLHN proceeding to closing will be satisfied if Lender acquires title to the Property pursuant to any Sheriff's Sale and Lender and Hospital Entities perform their obligations hereunder.

4.2 WH Memorial and the Hospital Entities acknowledge and agree that Lender's obligations under Sections 3.2 and 3.3 of this Agreement are conditioned upon the satisfaction of the following (the "Conditions"):  (a) Borrower refraining from contesting, causing the stay of, or otherwise delaying the Foreclosure Proceeding or Cash Collateral Actions; (b) SLHN completing closing the transactions contemplated under and in accordance with the St. Luke's Definitive Agreement (the "Transaction"), and (c) no Agreed Rent being past due and owing.  In the event that

{00179862;20}

PH2 1042814v2 10/07/11

Case 3:13-cv-04241-FLW-TJB   Document 19-2   Filed 10/21/13   Page 22 of 32 PageID: 537
Case 3:13-cv-04241-FLW-TJB   Document 17-1   Filed 09/12/13   Page 8 of 18 PageID: 313
Case 3:13-cv-04241-FLW-TJB   Document 1-3   Filed 07/11/13   Page 8 of 18 PageID: 97

Hospital or SLHN shall definitively determine not to proceed with the Transaction, the same shall be deemed a failure of the Conditions and Hospital shall immediately provide written notice of the same to Lender.

4.3 The parties acknowledge that the St. Luke's Definitive Agreement is not binding upon SLHN. The parties further acknowledge and agree that completion of the Transaction is subject to, among other things, the approval of the respective Boards of Trustees of SLHN and the Hospital, the successful consummation of the St. Luke's Definitive Agreement, the completion of SLHN's due diligence efforts and satisfaction by SLHN (in its sole discretion) with the results of its findings, the receipt of all required federal, state or local governmental approvals and the successful negotiation of a plan of restructuring acceptable to SLHN between the Hospital, Allstate Investments, LLC, and certain other creditors of the Hospital. SLHN shall have no liability or obligation of any nature whatsoever to Lender or the Hospital to proceed with the Transaction except to the extent and only to such effect as shall be expressly set forth in the St. Luke's Definitive Agreement.

## 5.   MISCELLANEOUS.

5.1 **Binding Effect.** This Agreement shall be binding on, and inure to the benefit of, the Lender, WH Memorial, and the Hospital Entities and their respective successors and assigns upon (a) the Lender, WH Memorial, and the Hospital Entities executing this Agreement and (b) SLHN executing the Acknowledgement and Consent attached to this Agreement. If Lender sells the Borrower's indebtedness under the Loan Documents and/or assigns the Loan Documents, and/or assigns the winning Sheriff's Sale bid, this Agreement shall not be terminated and the party that acquired the Loan Documents and/or the winning Sheriff's Sale bid from Lender, as the case may be, shall acquire the same subject to the terms of this Agreement. For the avoidance of doubt, nothing contained in this Agreement restricts, limits, or otherwise impedes Lender's ability to sell the Borrower's indebtedness under the Loan Documents and/or assign the Loan Documents, any winning Sheriff's Sale bid, and/or rights to acquire the title to the Property pursuant to any Sheriff's Sale before the occurrence of the Title Acquisition Date or to sell the Property after the occurrence of the Title Acquisition Date, provided, however, that the sale of the Loan Documents prior to the Title Acquisition Date, and/or the assignment of the winning Sheriff's Sale bid or any sale of the Property by Lender after the Title Acquisition Date shall be expressly made under and subject to this Agreement. . In the event that SNLH shall consummate the Transaction, SNLH shall be deemed an intended third party beneficiary of this Agreement. To induce Lender to enter into this Agreement, WH Memorial and the Hospital Entities represent and warrant to Lender that (a) they have the right, power, and authority and have taken all necessary corporate or other organizational action to duly authorize the execution, delivery, implementation, and performance of and compliance with this Agreement and all agreements, instruments, and documents executed or delivered by them or any of them pursuant hereto or in connection herewith, and (b) the execution and delivery of this Agreement and all agreements, instruments, and documents executed or delivered by them or any of them pursuant hereto or in connection herewith will not conflict with or result in a breach of the terms or conditions of the

Case 3:13-cv-04241-FLW-TJB   Document 19-2   Filed 10/21/13   Page 23 of 32 PageID: 538.
Case 3:13-cv-04241-FLW-TJB   Document 17-1   Filed 09/12/13   Page 9 of 18 PageID: 314.
Case 3:13-cv-04241-FLW-TJB   Document 1-3   Filed 07/11/13   Page 9 of 18 PageID: 98

organizational documents of WH Memorial or the Hospital Entities or any agreement to which WH Memorial or a Hospital Entity is a party.

5.2  **Notices.** All notices or other communications required or permitted to be given pursuant to the provisions hereof shall be deemed served upon delivery or, if transmitted via nationally recognized overnight courier, upon the first to occur of receipt or the expiration of one (1) business day after deposit with such recognized overnight courier, addressed to the address of Lender or WH Memorial and the Hospital Entities appearing below:

### Lender:

Liberty Bell Capital II, L.P.
c/o Titan Asset Management, LLC
1300 Virginia Drive, Suite 225
Fort Washington, PA 19034
Attention: John Giangiulio

with a copy to:
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103
Attn: Michael Menkowitz, Esquire

### WH Memorial and the Hospital Entities:

WARREN HOSPITAL
185 Roseberry Street
Phillipsburg, NJ 08865
Attn: Mark Sblendorio, Esquire

with a copy to:
SILVERANG & DONOHOE, LLC
595 E. Lancaster Avenue, Suite 203
St. Davids, PA 19087
Attention: Kevin J. Silverang, Esquire

provided, however, any party shall have the right to change its address for notice hereunder by the giving of written notice thereof to the other party in the manner set forth in this Agreement.

5.3  **Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute and be construed as one and the same instrument.

5.4  **Remedies Cumulative.** All rights or remedies of Lender are cumulative and shall be in addition to any and all other rights and remedies provided by law and by other agreements between Lender and Borrower or others.

Case 3:13-cv-04241-FLW-TJB   Document 19-2   Filed 10/21/13   Page 24 of 32 PageID: 539
Case 3:13-cv-04241-FLW-TJB   Document 17-1   Filed 09/12/13   Page 10 of 18 PageID: 315
Case 3:13-cv-04241-FLW-TJB   Document 1-3   Filed 07/11/13   Page 10 of 18 PageID: 99

5.5 <u>Paragraph Headings</u>. Paragraph headings in this Agreement are for convenience only and are not to be construed as part of this Agreement or in any way limiting or applying the provisions hereof.

5.6 <u>Integration and Entire Agreement</u>. This Agreement is specifically limited to the matters expressly set forth herein. This Agreement and all other agreements, instruments, and documents executed or delivered pursuant to or in connection with, referred to in, comprising, or relating to this Agreement constitute the sole, final, and entire agreement of the parties with respect to the subject matter hereof and thereof, supersede any and all prior oral and written communications with respect to the subject matter hereof and thereof, and may not be contradicted or varied by evidence of prior, contemporaneous, or subsequent oral agreements or discussions of the parties hereto. There are no oral agreements among the parties hereto relating to the subject matter hereof.

5.7 <u>Survival of Representations and Warranties</u>. All representations and warranties contained in this Agreement shall survive the execution of this Agreement.

5.8 <u>Governing Law</u>. This Agreement and the rights and obligations of the parties hereunder are to be construed and interpreted in accordance with and governed by the internal laws of the state of New Jersey without reference to conflict of laws principles.

5.9 <u>Severability of Provisions</u>. Any provision of this Agreement that is held to be illegal, inoperative, unenforceable, void, or invalid in any jurisdiction will, as to that jurisdiction, be ineffective to the extent illegal, inoperative, unenforceable, void, or invalid without affecting the remaining provisions in that jurisdiction or the legality, operation, enforceability, or validity of that provision in any other jurisdiction, and to this end the provisions of this Agreement are declared to be severable.

5.10 <u>Amendment and Waiver</u>. No amendment of this Agreement, and no waiver, discharge, or termination of any one or more of the terms or conditions hereof, is effective unless set forth in writing and signed by all of the parties hereto and acknowledged and consent to by SHLN.

5.11 <u>Termination</u>. Upon (a) SLHN's termination of the Definitive Agreement, (b) Borrower contesting, causing the stay of, or otherwise delaying the Foreclosure Proceeding or Cash Collateral Actions, (c) Lender's receipt of a notice from the Hospital or SLHN that that the St. Luke's Definitive Agreement has been terminated, or (d) any of the Hospital Entities failing to pay Agreed Rent, Lender may terminate this Agreement as to Lender's obligations and agreements set forth in Sections 3.2 and 3.3 above including, without limitation, the waivers and releases set forth in Section 3.2(b) and Section 3.2(c) above, but the Subleases shall continue in full force and effect as direct leases between Lender, as landlord, and the Sublessees, as tenant, pursuant to the NDA's, and the Hospital Joinders shall remain in full force and effect.

Case 3:13-cv-04241-FLW-TJB   Document 19-2   Filed 10/21/13   Page 25 of 32 PageID: 540
Case 3:13-cv-04241-FLW-TJB   Document 17-1   Filed 09/12/13   Page 11 of 18 PageID: 316
Case 3:13-cv-04241-FLW-TJB   Document 1-3   Filed 07/11/13   Page 11 of 18 PageID: 100

6.    <u>INCORPORATION</u>.  The Acknowledge and Consent and the Exhibits attached hereto are incorporated herein by this reference.

[SIGNATURE PAGES FOLLOW]

{00179862;20}

PH2 1042614v2 10/07/11

Page 11 of 24

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

Witness:

**LENDER**

**LIBERTY BELL CAPITAL·II, L.P.,** a Delaware limited partnership

By: LB 3, L.P., its general partner

By: Titan Asset Management, LLC, its general partner

By: _____
Name: _____
Title: _____

Name: *MICHAEL J. KORNACKI*

Witness:

**THE HOSPITAL**

**WARREN HOSPITAL**

Name: _____

By: _____
Name: _____
Title: _____

Witness:

**HOSPITAL AFFILIATES**

**WH MEMORIAL PARKWAY INVESTORS, L.L.C.**

Name: _____

By: _____
Name: _____
Title: _____

Witness:

**WARREN HEALTH CARE ALLIANCE, P.C.**

Name: _____

By: _____
Name: _____
Title: _____

Case 3:13-cv-04241-FLW-TJB   Document 19-2   Filed 10/21/13   Page 27 of 32 PageID: 542
Case 3:13-cv-04241-FLW-1   ,   Document 17-1   Filed 09/12/13   1   je 13 of 18 PageID: 318
Case 3:13-cv-04241-FLW-TJB   Document 1-3   Filed 07/11/13   Page 13 of 18 PageID: 102

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

Witness:                                   **LENDER**

                                           **LIBERTY BELL CAPITAL II, L.P.,** a Delaware limited partnership

                                           By:    LB 3, L.P., its general partner

                                                  By:    Titan Asset Management, LLC, its
                                                         general partner

_____                            By:    _____
Name:                                                           Name:
                                                                Title:

Witness:                                   **THE HOSPITAL**

                                           **WARREN HOSPITAL**

                                           By: _____
Name: MARC SPLENDORIO, ESQ.                Name: THOMAS H. LITZ
                                           Title: PRESIDENT • CEO

Witness:                                   **HOSPITAL AFFILIATES**

                                           **WH MEMORIAL PARKWAY INVESTORS, L.L.C.**

                                           By: _____
Name: MARC SBLENDORIO, ESQ.                Name: THOMAS H. LITZ
                                           Title: PRESIDENT • CEO

Witness:                                   **WARREN HEALTH CARE ALLIANCE, P.C.**

                                           By: _____
Name: MARC SBLENDORIO, ESQ.                Name: THOMAS H. LITZ
                                           Title: VICE-PRESIDENT

{00179862;18}

Page 11 of 23

Case 3:13-cv-04241-FLW-TJB   Document 19-2   Filed 10/21/13   Page 28 of 32 PageID: 543
Case 3:13-cv-04241-FLW   B   Document 17-1   Filed 09/12/13   ige 14 of 18 PageID: 319
Case 3:13-cv-04241-FLW-TJB   Document 1-3   Filed 07/11/13   Page 14 of 18 PageID: 103

Witness:

TWO RIVERS ENTERPRISES, INC.

By:
Name: THOMAS H. LITZ
Title: PRESIDENT · CEO

Name: MADE BRUNDAO, DO

(ALL SIGNATURES MUST BE ACKNOWLEDGED)

{00179862;18}

Page 12 of 23

Case 3:13-cv-04241-FLW-TJB   Document 19-2   Filed 10/21/13   Page 29 of 32 PageID: 544
Case 3:13-cv-04241-FLW-   3   Document 17-1   Filed 09/12/13   ge 15 of 18 PageID: 320
Case 3:13-cv-04241-FLW-TJB   Document 1-3   Filed 07/11/13   Page 15 of 18 PageID: 104

## ACKNOWLEDGEMENT AND CONSENT

This Acknowledgement and Consent ("Consent") is attached to and incorporated by reference into that certain Post-Foreclosure Agreement Respecting Status of Leases dated of even date herewith, by and among WARREN HOSPITAL, a New Jersey non-profit corporation (the "Hospital"), WH MEMORIAL PARKWAY INVESTORS, L.L.C., a New Jersey limited liability company ("WH Memorial"), WARREN HEALTH CARE ALLIANCE, P.C., a New Jersey corporation ("WHCA"), TWO RIVERS ENTERPRISES, INC., a New Jersey corporation ("Two Rivers" and, together with the Hospital and WHCA, collectively, the "Hospital Entities" and, individually, each a "Hospital Entity"), and LIBERTY BELL CAPITAL II, L.P., a Delaware limited partnership ("Lender") (the "Post-Foreclosure Agreement"). Unless otherwise provided, capitalized terms contained but not defined herein have the meanings given to such terms in the Post-Foreclosure Agreement. St. Luke's Health Network, Inc.'s ("SLHN") obligation to proceed with closing on the transactions contemplated by the St. Luke's Definitive Agreement is conditioned upon, among other things, the termination of the Master Lease, Master Sublease, and Subleases and the entering into of direct leases in a form acceptable to SLHN between the Hospital Entities and Lender and the Third Party Subtenants and Lender, all as contemplated in the Post-Foreclosure Agreement. Accordingly, SLHN confirms that if Lender acquires title to the Property pursuant to any Sheriff's Sale and performs the obligations required of Lender under the Post-Foreclosure Agreement, such performance by Lender will be satisfactory to SLHN and the Hillcrest Mail Condition Precedent respecting the termination of the Master Lease, Master Sublease, and Subleases and the entering into of direct leases as aforesaid shall be deemed satisfied.

Notwithstanding the foregoing, completion of the Transaction (as defined in the St. Luke's Definitive Agreement) is subject to, among other things, the approval of the respective Board of Trustees of SLHN and the Hospital, the completion of SLHN's due diligence efforts and satisfaction by SLHN (at its sole discretion) with the results of its findings, the receipt of all required federal, state or local governmental approvals and the successful negotiation of a plan of restructuring acceptable to SLHN between the Hospital, Allstate Investments, LLC, and certain other creditors of the Hospital. SLHN shall have no liability or obligation of any nature whatsoever to Lender or the Hospital to proceed with the Transaction except to the extent and only to such effect as shall be expressly set forth in the St. Luke's Definitive Agreement to effect the Transaction. In no event shall Lender be deemed an intended beneficiary of any agreement between SLHN with respect to the Transaction; provided, however, SLHN agrees to be bound by the terms of the Post-Foreclosure Agreement, as the owner of the assets of the Hospital, should the Transaction occur.

Case 3:13-cv-04241-FLW-TJB   Document 19-2   Filed 10/21/13   Page 30 of 32 PageID: 545
Case 3:13-cv-04241-FLW-TJB   Document 17-1   Filed 09/12/13   Page 16 of 18 PageID: 321
Case 3:13-cv-04241-FLW-TJB   Document 1-3   Filed 07/11/13   Page 16 of 18 PageID: 105

In the event that Hospital or SLHN shall definitively determine not to proceed with the Transaction, SLHN shall provide prompt written notice of the same to Lender.

ST. LUKE'S HEALTH NETWORK, INC.

By: _____

Name:    Thomas P. Lichtenwalner
Title:    Senior Vice President, Finance
Date:

Case 3:13-cv-04241-FLW-TJB  Document 19-2  Filed 10/21/13  Page 31 of 32 PageID: 546
Case 3:13-cv-04241-FLW-TJB  Document 17-1  Filed 09/12/13  Page 17 of 18 PageID: 322
Case 3:13-cv-04241-FLW-TJB  Document 1-3  Filed 07/11/13  Page 17 of 18 PageID: 106

## EXHIBIT A

## PROPERTY

[See attached]

{00179862;20}

PH2 1042814v2 10/07/11

Case 3:13-cv-04241-FLW-TJB  Document 19-2  Filed 10/21/13  Page 32 of 32 PageID: 547
Case 3:13-cv-04241-FLW-TJB  Document 17-1  Filed 09/12/13  Page 18 of 18 PageID: 323
Case 3:13-cv-04241-FLW-TJB  Document 1-3  Filed 07/11/13  Page 18 of 18 PageID: 107

## EXHIBIT A

### LEGAL DESCRIPTION

All that certain Lot, place or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of Phillipsburg and Township of Lopatcong, County of Warren, State of New Jersey:

BEING known and designated by the following unit designations in the Hillcrest Condominium situate in the Town of Phillipsburg and the Township of Lopatcong, Warren County, New Jersey together with the appurtenant undivided percentage interest in the common elements thereto, in accordance with the terms, conditions, covenants, restrictions, easements, limitations and other provisions of the Master Deed for Hillcrest Condominium, dated September 3, 2003 and recorded in the Warren County Clerk's Office simultaneously herewith as same may now or hereinafter be lawfully amended or supplemented.

Unit B together with an undivided 34.82% interest in the common elements.

Unit C together with an undivided 15.38% interest in the common elements.

Unit D together with an undivided 23.09% interest in the common elements.

The above description is drawn in accordance with a survey made by Mace Consulting Engineers, P.C. dated August 28, 2003.

NOTE FOR INFORMATION ONLY: Being Lot(s) 23 & 24, Block 58, Tax Map of the Town of Phillipsburg, and Lot 19, Block 401, Tax Map of the Township of Lopatcong, County of Warren.