***NOT FOR PUBLICATION***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| LIBERTY BELL CAPITAL II, LP, | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 13-4241 (FLW) |
| v. | : | |
| WARREN HOSPITAL, WH MEMORIAL PARKWAY INVESTORS, L.L.C., WARREN HEALTH CARE ALLIANCE, P.C., and TWO RIVERS ENTERPRISES, INC. | : | **OPINION** |
| Defendants. | : | |

**WOLFSON, United States District Judge**:

In this contract dispute, Plaintiff Liberty Bell Capital II, LP ("Plaintiff") entered into an agreement with Defendants Warren Hospital, WH Memorial Parkway Investors, L.L.C., Warren Health Care Alliance, P.C. and Two Rivers Enterprises, Inc. (collectively, "Defendants"), whereby Defendants allegedly agreed, inter alia, not to interfere with Plaintiff's purchase of a foreclosed property. In its Amended Complaint, Plaintiff alleges that Defendants breached the terms of that agreement, as well as breaching their implied duty of good faith and fair dealing. In the instant matter, Defendants move to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons that follow, the Court **DENIES** the motion.

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The following facts are taken as true from the Amended Complaint.[1] At the outset, it bears noting that, according to the Amended Complaint, defendant entities and other third-party entities formed complex business relationships and they are closely related to each other. Indeed, defendants Two Rivers Enterprises, Inc. and Warren Health Care Alliance, P.C. are affiliates of defendant Warren Hospital. Amed. Compl., ¶ 13. Warren Hospital, in turn, is the sole stockholder of Two Rivers Enterprises, Inc. Id. In addition, Two Rivers Enterprises, Inc. is the sole member of WH Memorial Parkway Investors, L.L.C. Id. at ¶ 12. WH Memorial Parkway Investors, L.L.C. and non-party InMed Investors, L.L.C. ("InMed") were each 50% members of Hillcrest Medical Plaza, L.L.C. ("Hillcrest"), a holding company for property located at 185 Roseberry Street, Phillipsburg, NJ 08865 (the "Property"), the subject of this lawsuit. Id. at ¶ 9-10. However, WH Memorial Parkway Investors, LLC., was the sole managing member of Hillcrest and, thereby, the controlling member. Id. at ¶ 11.

Hillcrest financed the purchase of the Property through a loan from Wells Fargo in the amount of $12,300,000.00. Id. ¶ 14. The loan was secured by a mortgage on the Property. Id. ¶ 15. Thereafter, Hillcrest defaulted on its obligations under the loan, and Wells Fargo obtained a foreclosure judgment in its favor on July 11, 2011. Id. ¶¶ 16-18.

At the time of the foreclosure proceedings, multiple tenants leased and subleased portions of the Property under a complex arrangement of lease and sublease agreements. Id. ¶ 20. Warren Hospital and Hillcrest were parties to a master lease agreement, under which Warren Hospital leased the entire Property from Hillcrest. Id. at ¶ 21. Warren Hospital subleased the

---

[1] Defendants' motion to dismiss reads much like a motion for summary judgment. In particular, many facts contained in Defendants' briefing are not allegations from the Amended Complaint; rather, they represent Defendants' version of the facts in this case. However, the inclusion of these so-called "facts" is improper on a dismissal motion. Thus, those facts are disregarded.

2

entire Property to WH Memorial Parkway Investors, L.L.C.  Id. at ¶ 22.  WH Memorial Parkway Investors, L.L.C., in turn, subleased portions of the Property to Warren Health Care Alliance P.C., Two Rivers Enterprises, Inc. and Warren Hospital.  Id. at ¶ 23.  WH Memorial Parkway Investors, L.L.C. also directly leased other portions of the Property to non-parties unaffiliated with Defendants.  Id. at ¶ 24.

Around the time the foreclosure proceedings commenced, Warren Hospital entered into a "Definitive Agreement" with St. Luke's Health Network, Inc. ("St. Luke's") under which St. Luke's would acquire Warren Hospital.  Id. at ¶ 27.  The acquisition was contingent upon Warren Hospital entering into a post-foreclosure agreement with Wells Fargo or an entity that would acquire title to the Property, or settling certain litigation with InMed[2] such that Warren Hospital would have all of the rights and benefits of a post-foreclosure agreement.  Id. at ¶¶ 28-29.

After the foreclosure judgment, but before the sheriff's sale, Plaintiff purchased the debt of Hillcrest from Wells Fargo, along with Wells Fargo's rights under the foreclosure judgment and the loan and mortgage.  Id. at ¶ 19.  Subsequently, Defendants entered into an agreement (the "Post-Foreclosure Agreement") with Plaintiff, under which - according to Plaintiff - Defendants agreed not to contest the foreclosure and sheriff's sale, and to provide all cooperation necessary to effectuate Plaintiff's acquisition of the Property.  Id. at ¶¶ 30-31.  In return, Plaintiff agreed to honor the leases that had been in place prior to the sheriff's sale if Plaintiff were successful in acquiring the Property.  Id. ¶ 32.  Plaintiff would become the owner of the Property and directly

---

[2] While the Amended Complaint alleges that InMed had pending claims against WH Memorial Parkway Investors, L.L.C., Hillcrest, Warren Hospital and other parties, the Complaint does not allege any factual surroundings of that litigation.  For the purposes of completeness, according to Defendants, InMed commenced the civil suit to contest its status as fifty percent non-controlling member and owner of Hillcrest.

3

lease the Property to the tenants under the same material terms as those that existed prior to the sheriff's sale.  Id.  In addition, Plaintiff agreed to revise Warren Hospital's master lease to exclude the then-vacant portions of the Property and provide Warren Hospital with a corresponding rent reduction.  Id.  Plaintiff also agreed to relieve Warren Hospital of millions of dollars of past rental payments it had failed to make to the landlord.  Id.

The sheriff's sale was held on November 28, 2011.  Id. at ¶ 38.  At the sheriff's sale, there were no other bids made on the Property.  Id.  However, subsequent to the sheriff's sale, on December 7, 2010, counsel for Warren Hospital allegedly held a telephone conference with Plaintiff and informed Plaintiff that Warren hospital had reached an agreement with InMed which - Warren Hospital acknowledged - would result in Hillcrest exercising its right of redemption under New Jersey law, by satisfying the full amount of the judgment within ten days of the sheriff's sale.  Id. at ¶ 43.  Counsel for Warren Hospital inquired whether Plaintiff would be satisfied with the sudden change in plans.  Id. at ¶ 44.  Plaintiff protested and insisted that Warren Hospital should move forward with the parties' Post-Foreclosure Agreement, and that Plaintiff, being the highest bidder, should obtain title to the Property without any interference from Defendants.  Id.

Thereafter, "Defendants and InMed [allegedly] entered into a 'quid pro quo' arrangement whereby Warren Hospital agreed to relinquish its ownership interest in [Hillcrest] and give InMed sole ownership of [Hillcrest]."  Id. at ¶ 40.  In return, InMed agreed to dismiss pending claims it had against Defendants WH Memorial Parkway, L.L.C., Warren Hospital, and others in the unrelated state court litigation.  Id.  Subsequently, on December 8, 2011, Hillcrest exercised its right of redemption by paying the unpaid balance of the money owed under the foreclosure judgment.  Id. at ¶ 41.  Consequently, Hillcrest's redemption precluded Plaintiff from obtaining

title to the Property and assuming its role as landlord with respect to the various tenants and subtenants located on the Property. Id. at ¶¶ 47-48.

Plaintiff filed the instant suit against Defendants asserting claims for breach of contract and breach of the duty of good faith and fair dealing. Defendants move to dismiss those claims.

## II. STANDARD OF REVIEW

When reviewing a motion to dismiss on the pleadings, courts "accepts all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008) (citation and quotations omitted). In Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court clarified the 12(b)(6) standard. The Court held that the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 1965. In affirming that Twombly standards apply to all motions to dismiss, the Supreme Court has explained that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009). Moreover, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1949. Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009). In that connection, in deciding a motion to dismiss, the Court may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a

plaintiff's claim.  Lum v. Bank of Am., 361 F.3d 217, 222 n. 3 (3d Cir. 2004) abrogated in part on other grounds by Twombly, 550 U.S. at 557.

The Third Circuit has reiterated that "judging the sufficiency of a pleading is a context dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief."  West Penn Allegheny Health System, Inc. v. UPMC, 627 F.3d 85, 98 (3d Cir. 2010).  This means that, "[f]or example, it generally takes fewer factual allegations to state a claim for simple battery than to state a claim for antitrust conspiracy."  Id.  That said, the Rule 8 pleading standard is to be applied "with the same level of rigor in all civil actions."  Id. (citations and quotations omitted).  However, courts must be mindful that "a claimant does not have to 'set out in detail the facts upon which he bases his claim' . . . . The pleading standard is not akin to a 'probability requirement,' . . . to survive a motion to dismiss, a complaint merely has to state a 'plausible claim for relief.'"  Covington v. International Ass'n of Approved Basketball Officials, 710 F.3d 114, 118 (3d Cir. 2013) (citations omitted)).

### III.    DISCUSSION

As a preliminary matter, I note that many of Defendants' arguments are based upon facts that are not part of the Amended Complaint.  Clearly, those arguments are more appropriate for summary judgment rather than on a motion that tests the sufficiency of Plaintiff's pleadings.  For example, Defendants request that I dismiss Plaintiff's claims based in part upon "factual deficiencies and fallacies contained in the First Amended Complaint which amount to a complete failure to set forth a valid legal claim based upon true and established facts."  Def.'s Brief in Support of Motion to Dismiss (Def.'s Brief), p. 14.  Defendants also erroneously take issue with Plaintiff's allegations: "Liberty Bell makes several new allegations in its First Amended Complaint that defy credulity and reek of bad faith."  Id. at p. 20.  In that regard, I find that most

of the contentions made by Defendants are procedurally improper and inappropriate on this motion. I will only address those arguments made by Defendants that relate to the sufficiency of the pleadings.

To state a claim for breach of contract under New Jersey law, Plaintiff must allege (1) a contract between the parties; (2) a breach of contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations. See Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc., 2010 F. Supp. 2d 552, 561 (D.N.J. 2002); In re Cendant Corp. Sec. Litig., 139 F. Supp. 2d 585, 604 n.10 (D.N.J. 2001). In addition to the explicit terms of the contract, under New Jersey Law, an implied term of good faith is written into every contract. Wilson v. Amerada Hess Corp., 168 N.J. 236, 244 (2001). ("A covenant of good faith and fair dealing is implied in every contract in New Jersey."). On their motion, Defendants focus on the second and third elements by arguing that (1) Plaintiff has not sufficiently alleged a breach of the Post-Foreclosure Agreement; and (2) Plaintiff fails to allege the bases for the damages incurred by Plaintiff as a result of the breach. In addition, Defendants claim that Plaintiff has not sufficiently alleged a breach of the implied term of good faith and fair dealing.

### A. Breach of Contract

In its breach of contract claim, Plaintiff alleges that under the terms of the Post-Foreclosure Agreement, Defendants were required to "take such actions in or with respect to the Foreclosure Proceeding, any Sheriff's Sale, or the Cash Collateral Actions as the Lender may reasonably request to effectuate the terms and provisions and purposes of the Agreement." Post-Foreclosure Agreement, Ex. A §2.1. Based on those terms, upon placing the highest bid, Plaintiff alleges that it should have obtained title to the Property without any interference from

7

Defendants.  In that connection, Plaintiff accuses of Defendants orchestrating a plan to intentionally relinquish their ownership of Hillcrest to InMed, which allowed InMed -- a non-party to the Post-Foreclosure Agreement -- to exercise the right of redemption.  Plaintiff claims that but for Defendants' actions relinquishing ownership in Hillcrest, which Plaintiff argues are contrary to the terms of their Agreement, Plaintiff would have obtained the benefit for which it bargained under the Agreement, i.e., lack of interference from Defendants.

On the other hand, Defendants argue that Plaintiff has not sufficiently alleged a breach of the Post-Foreclosure Agreement because Defendants had complied with the terms of the Agreement by not contesting the foreclosure, or the sheriff's sale, of the Property.  In other words, because both the foreclosure and sheriff sale proceedings had concluded without any delay, stay or other interference from Defendants, Defendants argue that they completed their respective obligations under the Post-Foreclosure Agreement.  Defendants maintain that they were under no contractual obligation to ensure that Plaintiff obtained title to the Property, and that the redemption of the Property was effectuated by Hillcrest and InMed, both of which are not parties to the Post-Foreclosure Agreement.  Therefore, it is Defendants' position that even taking Plaintiff's allegations as true, Plaintiff cannot allege a breach of the Agreement.  The Court disagrees.

At issue here is the wording of the Post-Foreclosure Agreement.  Under Section 2.1 of the Post-Foreclosure Agreement:

> WH Memorial [WHM] and the Hospital Entities [Warren Hospital, WHCA and Two Rivers] hereby consent to the Foreclosure Proceeding, any Sheriff's Sale, and to the extent that they have legal standing to do so, the Cash Collateral Actions and acknowledge and agree that sufficient legal justification exists for the Foreclosure Proceeding, any Sheriff's Sale, and the Cash Collateral Actions.  WH Memorial and the Hospital Entities shall not contest, cause the stay of, or otherwise delay the Foreclosure Proceeding, any Sheriff's Sale, or the Cash Collateral Actions.  <u>WH Memorial and the Hospital Entities shall take such</u>

<u>actions in or with respect to the Foreclosure Proceeding, and Sheriff's Sale, or the Cash Collateral Actions as the Lender [Liberty Bell] may reasonably request to effectuate the terms and provisions and purposes of this Agreement.</u>

Post-Foreclosure Agreement, Ex. A § 2.1 (emphasis added).

Plaintiff alleges that, under this specific section, Defendants were contractually obligated to refrain from exerting any interference that would jeopardize Plaintiff obtaining title and possession to the Property, including directing Hillcrest to exercise its right of redemption. While Defendants argue that there is no express language in the Agreement defining Defendants' obligations regarding redemption or any other actions <u>after</u> the sheriff sale, it is Plaintiff's position that Defendants not only "agreed not to contest the foreclosure and sheriff sale," but also "to provide all cooperation necessary to effect Liberty Bell's acquisition of the Property." Amend. Compl., ¶ 31. Importantly, Plaintiff avers that such cooperation from Defendants was one of the hallmark purposes of the Post-Foreclosure Agreement. <u>Id.</u> at ¶ 33. And, according to the Section 2.1 of the Agreement, Defendants assented to take actions "in or with respect to the Foreclosure Proceeding, and Sheriff's Sale . . . as the Lender [Liberty Bell] may reasonably request to effectuate the terms and provision and **purposes** of this Agreement." Post-Foreclosure Agreement, Ex. A § 2.1 (emphasis added). Furthermore, Section 5.1 of the Post-Foreclosure Agreement stresses that

> [t]o induce Lender to enter into this Agreement, <u>WH memorial and the Hospital Entities represent and warrant to Lender that (a) they have the right, power, and authority and have taken all necessary corporate or other organizational action to duly authorize execution, delivery, implementation, and performance of and compliance with this Agreement</u> and all agreements, instruments, and documents executed or delivered by them or any of them pursuant hereto or in connection herewith, and (b) the execution and delivery of this Agreement and all agreements, instruments, and documents executed or delivered by them or any of them pursuant hereto or in connection herewith will not conflict with or result in a breach of the terms or conditions of the organizational documents of WH Memorial or the Hospital Entities or any agreement to which WH Memorial or a Hospital Entity is a party.

Post-Foreclosure Agreement, Ex. A § 5.1 (emphasis added).

I note that the term "purposes" is not defined in the Post-Foreclosure Agreement. Nonetheless, at this pleading stage, Plaintiff has sufficiently alleged that one of the purposes of the Agreement is that Defendants must take, or refrain from taking, certain actions in order to cooperate with Plaintiff in its goal of obtaining title to the Property. In that regard, taking as true the allegation, that Defendant relinquished control of Hillcrest to InMed for the purpose of depriving Plaintiff of the right to procure title to the Property, constitutes a breach of the Post-Foreclosure Agreement.[3] At the very least, discovery should proceed on the issue whether the parties agreed and intended for the Post-Foreclosure Agreement to govern their respective obligations post sheriff sale.

As to the element of damages, Defendants argue that Plaintiff's demand for damages of $5,000,000 is speculative because Plaintiff has failed to set forth the basis of its damages or state any reasonably probable causal connection between its claimed lost profit and any action or inaction on Defendants' part. Indeed, "[l]ost profits may be recoverable if they can be established with a reasonable degree of certainty." Passaic Valley Sewerage Com'rs v. St. Paul Fire and Marine Ins. Co., 206 N.J. 596, 609 (2011) (internal quotations omitted). "Anticipated profits that are remote, uncertain, or speculative, however, are not recoverable." Id. at 609-10 (quoting Perth Amboy Iron Works, Inc. v. Am. Home Assurance Co., 226 N.J. Super. 200, 224, 543 A.2d 1020 (App. Div. 1988)).

---

[3] Defendants argue that because Hillcrest and InMed are non-parties to the Post-Foreclosure Agreement, their decision to redeem the Property cannot be the basis of Plaintiff's breach of contract claim. However, Plaintiff's allegation relating to the breach of the Agreement is that Defendant orchestrated and financed the redemption by relinquishing control over Hillcrest for the purposes of preventing Plaintiff from obtaining title to the Property. Thus, since Defendants allegedly agreed not to interfere with Plaintiff acquiring the Property, the role which Hillcrest and InMed played in the redemption is irrelevant to Defendants' alleged conduct.

At this pleading stage, I find that Plaintiff's allegations of damages are sufficient to defeat a dismissal motion. Contrary to Defendants' contention, Plaintiff has alleged quantifiable damages, which include the difference between the value of the Property and the amount of the judgment. In addition, Plaintiff's pleadings and the supporting documents also set forth, inter alia, the lost profits from current and anticipated tenants of the Property under the Post-Foreclosure Agreement. Because these alleged damages are reasonably foreseeable as a result of Defendants' breach, I find that Plaintiff has met its pleading requirement as to this element.

Accordingly, Plaintiff's breach of contract claim is sufficiently pled.

### B. Breach of Implied Duty of Good Faith and Fair Dealing

Next, Defendants argue that Plaintiff did not adequately allege a breach of the duty of good faith and fair dealing because Plaintiff has failed to allege a breach of the Post-Foreclosure Agreement. Since I have found that Plaintiff has sufficiently alleged a breach of the Agreement, I reject Defendants' contention in this regard. In addition, "[a] plaintiff may be entitled to relief under the covenant [of good faith and fair dealing] if its reasonable expectations are destroyed when a defendant acts with ill motives and without any legitimate purpose." DiCarlo v. St. Mary Hosp., 530 F.3d 255, 267 (3d Cir. 2008) (quoting Brunswick Hill Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 1182 N.J. 210, 226 (2005) (internal quotations omitted)); Graco, Inc. v. PMC Global, Inc., 2009 WL 904010 (D.N.J. 2009) ("…defendants who act with improper purpose or ill motive may be found liable for breaching the implied covenant if the breach upsets the plaintiff's reasonable expectations under the agreement.").[4]

---

[4] Defendants cite to Dewey v. Volkswagen AG, 558 F. Supp. 2d 505 (D.N.J. 2008), for the proposition that a plaintiff "must allege malice on the part of the Defendant" in order to plead a breach of the duty of good faith and fair dealing. This is not accurate. The Dewey court stated that "[u]nder New Jersey law, a claim for Breach of Duty of Good Faith and Fair Dealing also requires a showing of 'bad motive or intention.' All plaintiffs satisfy this requirement by alleging malice on the part of Defendants." Dewey, 558 F. Supp. 2d at 531 (Citations omitted).

11

For this Count, Plaintiff alleges that Defendants breached their implied duty of good faith and fair dealing by (1) interfering with Plaintiff's purchase of the Property when Defendants intentionally relinquished ownership in Hillcrest to InMed in order to facilitate the redemption; (2) intentionally precluding Plaintiff, in bad faith, from purchasing the Property from a finalized foreclosure; and (3) forcing Plaintiff out of the benefit of its bargain under the Post-Foreclosure Agreement.  Amend. Compl., ¶ 57.  In so pleading, Plaintiff asserts that Defendants' decision to "conspire" with non-party InMed to cause Hillcrest to exercise its right of redemption was inconsistent with Defendants' implied duty of good faith.  I find that based on the totality of the alleged circumstances, Plaintiff has pled sufficient facts which, if proven, would demonstrate that Plaintiff's reasonable expectations under the Post-Foreclosure Agreement were compromised by Defendants' alleged ill-motive, and would thereby support a claim for breach of the duty of good faith and fair dealing.

## IV.  CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion to dismiss.  An order will be entered consistent with this Opinion.


Dated: April 10, 2014                         /s/    Freda L. Wolfson
                                              Freda L. Wolfson, U.S.D.J.

---

Simply put, the court only held that alleging malice is sufficient, but not necessary, to plead a breach of the duty of good faith and fair dealing.